[Civ. No. 9768. First Appellate District, Division One.—July 2, 1935.]

KNUTE B. ABELSETH, Petitioner, v. INDUSTRIAL AC-
    CIDENT COMMISSION et al., Respondents.

Clarence A. Henning for Petitioner.

Everett A. Corten and Arthur I. Townsend for Respondents.

THE COURT.—This is a proceeding to review a decision of the Industrial Accident Commission denying petitioner's application for compensation upon the ground that the disability from which he was suffering was not caused by an industrial injury.

The evidence discloses that the alleged injury occurred on October 18, 1932, at which time petitioner was of the age of forty-four years, a carpenter by trade and at the time engaged as such upon a dwelling house in San Francisco. About 2:30 in the afternoon of said day petitioner was engaged in assisting a truck driver remove a cabinet from the truck to the garage upon the premises. The cabinet weighed about two hundred pounds, was eight feet long, four feet wide and twelve inches deep. Petitioner assisted in moving the cabinet off the truck at about shoulder height, or five feet, then walking backwards carried one end a distance of about thirty feet, where the cabinet was deposited upon a stack of building material slightly elevated above the floor level. Upon lowering the cabinet petitioner was forced to assume a slightly twisting position. Just as petitioner set the cabinet down he experienced a very severe pain in the pit of his stomach, which was accompanied by a feeling of nausea. Efforts to induce vomiting were unavailing, and the pain increased in intensity to such an extent petitioner was forced to lie down. About half an hour later petitioner gathered up his tools and went home. About 5 P. M. he was visited by his family physician, who diagnosed his ailment as duodenal ulcer and ordered his immediate removal to a hospital. Petitioner was removed to the City and County Hospital, where he was operated upon the same day. The operation disclosed that petitioner was suffering from a perforation of a gastric or duodenal ulcer. He was required to remain in the hospital for a period of thirteen days, and his disability continued until December 29, 1932.

The uncontradicted evidence further discloses a very definite history of gastric ulcer prior to October 18, 1932. In 1916 petitioner suffered from indigestion, which continued until 1927 without much variation. The symptoms during this period consisted of a slightly distressed feeling about two hours after meals, which was somewhat relieved by taking food. In 1918 petitioner visited a doctor who prescribed

medicine and diet. In 1927 he suffered a hemorrhage one morning while on his way to work, and was removed to the Harbor Emergency Hospital and then removed to Franklin Hospital, where he remained nine days. His ailment was then diagnosed as gastric ulcer and his treatment while at the hospital and for a month thereafter consisted primarily of dieting. Petitioner at this time was required to cease work for a period of about three months. For about a year following this period no further symptoms appeared, but thereafter occasional pains in the stomach accompanied with slight indigestion occurred. In 1932, no symptoms appeared until about two weeks prior to October 18th, when petitioner experienced similar feelings upon two occasions.

■ The rule is well established that acceleration or aggravation of a preexisting disease is an injury attributable to the occupation causing such acceleration or aggravation. (*Thoreau* v. *Industrial Acc. Com.*, 120 Cal. App. 67, 70 [7 Pac. (2d) 767].)

■ The question to be determined herein is whether the perforation of the duodenal ulcer was the result of the muscular exertion arising in the course of petitioner's employment or whether as respondents contend the same resulted from the natural progressive nature of the ulcer itself. The evidence is in substantial conflict. The petitioner's family physician diagnosed the ailment prior to his removal to the hospital as duodenal ulcer, and advised hospitalization without operation. He did not perform the operation nor witness the same. He testified upon direct examination in response to a hypothetical question that "the strain of lifting could be and probably was the precipitating cause of the rupture at that particular moment. The description that the gentleman gives of immediately thereafter trying to vomit and of the cold sweat is rather characteristic of those perforating things in the abdomen". A letter from Dr. Thomas B. Wiper, associate resident physician, who assisted in the operation upon petitioner, was submitted to the commission, wherein the doctor stated: "It is in my opinion *conceivable* that a penetrating ulcer might be caused to rupture by unusual exertion or a strenuous lifting effort whereby a marked increase in intraabdominal tension would be brought about, this increased pressure exerted sufficient force upon the distended viscus to

cause rupture. *It is however not at all unusual for penetrating peptic ulcers to rupture spontaneously while the patient is at rest.''* (Italics ours.) Dr. W. W. Washburn examined the petitioner at the request of respondent commission in December, 1932, and thereafter on December 16, 1932, advised the commission in part as follows: ''That there was an active process in the pre-existing ulcer is indicated by the history of recent discomfort. The patient gives a history of lifting heavy case from high up in an awkward position, then lowering the case. He claims to have twisted the abdomen somewhat in this maneuver. Certainly the ulcer was penetrating and near to perforation before lifting. The patient says the abdomen' was not directly contused. However, perforation occurred almost immediately after somewhat unusual muscular effort which in my opinion may well have been a contributing factor in aggravating pre-existing disease (ulcer). Without having lifted it might be argued that perforation might not have occurred and the patient might have 'cured' his ulcer by diet, etc. . . . While there is considerable doubt in my mind as to the trauma of lifting being a contributing cause of the actual perforation in this case, it may well have been an aggravating cause. It is to be noted that we advise our ulcer cases to abstain from work and vigorous exercise while under treatment for peptic ulcer. So physical exercise is admittedly undesirable and retards healing of peptic ulcer, etc. So it may be argued that heavy lifting might by aggravation bring about acute perforation in an ulcer which might not otherwise have perforated. I assume that the history as given by the patient to me is correct. I would then consider that actual perforation came about due in a small measure to over exertion and that the patient is entitled to compensation, upon the basis of time lost, but not for any permanent disability.''

Subsequent to the rendering of this report Dr. Washburn was called as a witness for respondents at hearings held on January 19 and April 11, 1933. At these hearings the doctor testified that in his opinion it was very improbable that the perforation was the result of lifting. The doctor thereupon explained the discrepancy, if any, in his testimony before the commission and his report. It appears that subsequent to filing the written report, which was based upon a rather brief

examination of petitioner and the hospital record, further investigation was made by the witness. This investigation included a discussion with Dr. Butler, who performed the operation upon petitioner, as to what conditions the operation disclosed, as well as an examination of the microscopic report upon the ulcer. The witness thereupon stated that his written report had been based upon the assumption that adhesions were present which had ruptured, but that the operating surgeon stated and the microscopic report showed no adhesions were present. The witness then testified that the microscopic examination revealed ''that the base of the ulcer was thin and that the muscular coat was replaced by granular tissue; in other words, instead of having muscle°there, it was replaced by simply granular tissue which is merely a type of tissue with a few blood vessels in it and not a solid tissue at all. . . . It is a soft tissue . . . extremely weak. . . . It is merely further confirmation of my view. . . . So, it was my view the lifting of the weight was not related to the perforation, . . . and that the principal factor also is the natural process of the ulcer itself, which is a gnawing type of thing . . . '' The witness likewise clearly distinguished the difference in effect upon a gastric ulcer of a sudden or violent blow and a muscular strain.

It will be observed that a very definite difference of opinion exists between the expert witnesses as to whether the perforation of the gastric ulcer was accelerated by petitioner's lifting the cabinet, or was the natural result of the growing process of the ulcer itself. It is obvious that the question is one which, under the facts of this case at least, can only be determined by experts. The experts have disagreed upon the question and upon the testimony presented respondent commission has decided the question adversely to petitioner. Nor can the conflict of opinion upon the question be said to be fanciful or fictitious. The record herein is such that under the law the finding of respondent commission must be deemed conclusive. (*Brandon* v. *Industrial Acc. Com.*, 211 Cal. 341 [294 Pac. 1064].)

The award is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 1, 1935, and an applica-

tion by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1935.