[S. F. No. 16679. In Bank. June 16, 1942.]

MAYO BYRON STOLL, a Minor, etc., Petitioner, v. INDUS-TRIAL ACCIDENT COMMISSION et al., Respondents.

Fitz-Gerald Ames and John Clare Jury for Petitioner.

Everett A. Corten, J. Gould and Burbank, Laumeister & Littler for Respondents.

EDMONDS, J.—On September 28, 1937, a heavy timber fell upon Charles Stoll while he was engaged in reinforced concrete work. In an application for workmen's compensation, he claimed to have received injuries to his right chest and also that his right shoulder and back had been severely

wrenched. Eight months later, and before any decision had been made upon his application, he died. His minor child, by a guardian ad litem, was then substituted for him as the applicant in the proceeding, and the Industrial Accident Commission made an award of compensation based upon a finding that Stoll had been totally disabled for one month following the accident. The commission also found that any disability sustained by him subsequent to that caused by the accident was due to tuberculosis, which was neither proximately caused nor exacerbated by his injury or by any injury arising out of and in the course of his employment. Upon a rehearing the commission affirmed the findings and award which it had previously made.

The present proceeding was then commenced. It was alleged as grounds for the issuance of the writ, that the Commission acted without and in excess of its powers and jurisdiction; that the evidence does not justify the findings of fact; and that the findings and award and the decision after rehearing are unreasonable.

■ Concerning the first of these grounds, the petitioner asserts that the evidence as to the injury suffered by Stoll and his subsequent illness was presented before three different referees of the commission, none of whom was familiar with the entire record. The record supports the petitioner's assertions in this regard and shows various hearings which extended over a period of 18 months. But in granting the petition for rehearing, which was made upon all of the statutory grounds, the commission declared that it would submit the matter for reconsideration and determination upon the record then before it, ten days after service of the order, "unless within the said time good cause be shown to the contrary, in writing, and within which time any further requests either to file further medical reports or to request further hearing be requested and granted." In response to that order the petitioner's attorney asked for and was granted leave to file certain medical data, but there was no criticism of what the commission termed "the record as it now stands." Under these circumstances any irregularity in the commission's procedure was waived by the petitioner's failure to demand a further hearing in accordance with its order.

■ The petitioner's statement of the evidence, which he asserts does not justify the findings of fact, may be briefly summarized as follows: Before the injury Stoll was in good health and had worked steadily for some time. He had no

symptoms of tuberculosis, but within three weeks after the accident occurred, there were definite evidences of that disease. During that time he received lamp treatments and massages. Within two months he was hospitalized, and he died of chronic tuberculosis about six months later. The only evidence that he was suffering from active tuberculosis at the time of the injury is certain X-ray pictures taken two days after the accident, and these are not determinative of the question. On the contrary, the evidence shows that the injury lighted up a tubercular infection which was in a dormant, quiescent and latent state.

But the record does not support these conclusions. Although there is some evidence which would support a finding that Stoll's injury aggravated and produced an active tuberculosis from a previously dormant condition, there is other evidence directly to the contrary. The commission was confronted with this conflict of opinion concerning the cause of Stoll's illness and death and decided that, except for one month of disability, neither was caused by the accident.

The evidence in the case includes the testimony of Stoll, his wife and the foreman on the job where he was injured, and the written reports of several physicians. Two of the physicians supplemented their reports by testimony before the commission. All but two of them had examined Stoll.

At the first hearing upon his claim for compensation, Stoll testified that he had been in very good health before the happening of the accident and "never did have any trouble" requiring the services of a physician. His testimony is corroborated to some extent by his wife, who met him about a year before. During that time, she said, he gave no evidence of ill health or tuberculosis. The foreman, who had known him for some time, stated that he never knew him to be ill.

The first physician who examined Stoll was Dr. F. Justin McCarthy, who saw him two days after the accident occurred. His report includes a statement of the facts concerning the accident which is substantially the same as the testimony of Stoll. Dr. McCarthy's opinion, based in part upon X-ray pictures taken that day, was that Stoll had "a definite muscle strain causing soreness. He will be under treatment for three or four weeks and should make a complete recovery." Dr. McCarthy examined Stoll again about three weeks later. His findings were: "Insofar as the injury is concerned, he is practically well at this time. He states that he has been los-

ing weight and I have therefore referred him to Dr. H. M. F. Behneman for examination."

The report of Dr. Behneman is based upon a very complete examination of Stoll made on October 26, 1937. It also includes a statement concerning the happening of the accident which agrees with that given by Stoll. Dr. Behneman expressed the opinion: "There is ample evidence here of the diagnosis of advanced pulmonary tuberculosis. There was also definite evidence of the pathology in the pictures of the right shoulder taken the day after his accident. The process was so advanced that previous to the accident we have evidence of numerous subjective symptoms, proving its chronicity. It is our firm belief that neither the accident nor the physical therapy treatments exacerbated this tuberculosis."

The day following his examination by Dr. Behneman, Stoll was examined by Dr. Shipman. This examination included fluoroscopy, X-ray and laboratory work. Based upon it, Dr. Shipman expressed the opinion that Stoll gave evidence of "advanced, active, pulmonary tuberculosis with infiltration, consolidation and cavitation of the right upper lobe. Since the changes are advanced and involve cavitation as well as fibrosis, the latter being indicated by some deviation of the trachea toward the affected side, it is obvious that the disease existed long before the date of the accident and in addition there is X-ray evidence two days after the accident to show that the disease actually did exist in an advanced state at that time. There is, therefore, no reason to suppose that the accident or subsequent manipulation of his right shoulder had anything to do with his tuberculosis. Since his disease is active, Mr. Stoll should be hospitalized and receive appropriate treatment."

On November 12, 1937, Stoll was received as a patient in San Francisco Hospital. In March, 1938, he filed with the commission a report made by Dr. W. C. Eidenmuller based upon a case history, which is in accord with his testimony and the reports made by the other physicians who had examined him. Although Dr. Eidenmuller stated as the consensus of medical opinion that either quiescent or active lung infection may become gradually or abruptly activated by trauma resulting from even slight stress or force, he stated that he could not say definitely whether either the accident or the treatment by light and massage had anything to do with the rapid spread of the tuberculosis. To express an opinion either way, he said, "presupposes knowledge and compre-

hension beyond the powers of man however well trained and experienced.''

Following the filing of this report, on April 14, 1938, the commission held a hearing for the purpose of allowing counsel for Stoll to cross-examine Dr. Shipman. The physician agreed with the medical opinion, which he said is well established, that trauma, strain or even physio-therapy treatments can exacerbate a preexisting tuberculosis condition and bring about a frank onset of pulmonary tuberculosis. But there was not enough ground, he said, for concluding that Stoll's injury had activated his lesion, and in reaching his opinion he relied, in part upon the X-rays taken two days after the injury and those made a month later.

The applicant then filed a second report made by Dr. Eidenmuller under date of April 22, 1938. In this report Dr. Eidenmuller considered the opinion of Dr. Shipman, and discussed the X-rays mentioned by him. It is questionable, said Dr. Eidenmuller, whether that taken two days after the accident shows active tuberculosis. The X-ray of October 22nd showed extensive involvement of the upper two lobes of the right lung with a large cavity, the presence of which leads one to believe that it probably was there two days after the accident. "But there still is doubt in my mind," he continued, "that the disease was active at the time of the accident, and there is likewise also a doubt that the accident was the proximate cause of the activation of the T. B.''

The next medical report, dated May 13, 1938, was made by Dr. B. L. Freedlander on behalf of Stoll. It states that he had examined the injured man about four weeks after the accident and also on several occasions after his entry into the San Francisco Hospital. He also said that he had read the reports made by the other physicians. Because of blurring caused by faulty technique, he said, no conclusions can be drawn from the first X-ray. "It is reasonable to presume,'' he concluded, "that the tuberculosis could have progressed to the advanced stage within the next four weeks, as shown in the next X-ray taken October 22, 1937.''

The insurer then filed the written opinion of Dr. Irving S. Ingber concerning the X-ray films taken in September. In this report, dated May 23, 1938, the physician stated that in one of these films ''a definite lung lesion can be seen but no details can be evaluated.'' The later X-ray, he said, shows ''extensive infiltration of the right upper lobe with cavity formation.'' A second report by Dr. Ingber, dated a week

later, gives additional reasons for his conclusion concerning the first X-rays.

Following the death of Stoll, and after the minor son had been substituted for him as an applicant, there was filed in behalf of the insurer a report of Dr. Jesse L. Carr, dated December 7, 1938. This report also includes a case history which agrees with that given by the other physicians. His diagnosis, based upon the rapidity of the development of the disease and the appearance of the X-rays, was of caseous gelatinous pneumonia. In his opinion, there was no logical association between the accident and the definite and characteristic course of tuberculosis in the patient.

Almost a year after Dr. Carr's report was filed, the commission submitted its file to Dr. Harold Guyon Trimble, who after reviewing the medical reports and the X-rays, concluded that at the time of his injury Stoll was suffering from active pulmonary tuberculosis which had no direct relation to his occupation. The injury, he said, did not cause a latent pulmonary tuberculosis to spread.

Following the filing of this report, the commission held a hearing for the purpose of allowing counsel for the applicant to cross-examine Dr. Trimble. Conceding that the X-ray taken in September is not a good picture of the chest, he expressed the opinion that it definitely indicates a tuberculosis cavity. He based his opinion concerning Stoll's condition at the time of the injury, he said, upon all of the case history, as shown in the file, and not upon the X-ray alone.

According to one medical authority quoted by a physician testifying on behalf of the petitioner: ''The problem of the indirect influence of trauma on disease of the respiratory tract is of every degree of difficulty; until in many cases of pulmonary tuberculosis, for instance, individual patients offer almost insoluble difficulties.'' Unquestionably the commission was keenly aware of such difficulties because, before reaching a decision it submitted the entire record to a physician of its own choosing for an opinion upon the medical question involved. Aside from the testimony of that physician, who said Stoll was suffering from active tuberculosis at the time he was injured, there is substantial evidence to support the commission's findings. Under such circumstances they are conclusive upon review. (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal. (2d) 40 [112 P. (2d) 615]; *Schaller* v. *Industrial Acc. Com.*, 11 Cal. (2d) 46 [77 P. (2d) 836];

*S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal. (2d) 411 [110 P. (2d) 377].)
The award is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., and Traynor, J., concurred.

Petitioner's application for a rehearing was denied July 13, 1942.