[Civ. No. 7753. Fourth Dist. Oct. 7, 1965.]

WILLIAM M. FERRIS, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, CITY OF SAN BERNARDINO et al., Respondents.

Samuelsen & Bolson, John H. Bolson and N. R. Samuelsen for Petitioner.

William T. Hays as Amicus Curiae on behalf of Petitioner.

Everett A. Corten, Edward A. Sarkisian, T. Groezinger, Loton Wells and David Green for Respondents.

BROWN (R. M.), J.*—Petitioner, a policeman, seeks by this writ of review to annul a decision after reconsideration to have determined the lawfulness of that certain order denying reconsideration issued by the Industrial Accident Commission on May 29, 1964.

The petitioner began work for the City of San Bernardino Police Department in 1952 and worked for about three weeks on an assignment to a radio car; he was assigned as a jailer for one month in December 1953; and for the remainder of his service as a police officer he was assigned to the records and identification section of the police department.

---

*Assigned by the Chairman of the Judicial Council.

On January 22, 1963, on his day off, petitioner had taken care of some private affairs, had had dinner, and then went to his home. After having personal relations with his wife, he experienced chest pains and other acute symptoms. Theretofore he had experienced certain nervousness and tremors on the job which were not typical of heart trouble. The medical evidence shows that the petitioner's heart attack on this date was diagnosed as myocardial ischemia or heart insufficiency. Such insufficiency, however, was not severe enough to produce actual infarction. According to the doctors, while petitioner did not suffer an actual infarction, he had an arteriosclerotic condition. An opinion was expressed by Dr. Dimitroff that the arteriosclerosis was not an occupational disease but was caused by abnormal cholesterol metabolism and that the chest pains of the petitioner were not cardiac but were part of a previous coronary insufficiency. Dr. Miley concluded that the petitioner was ''an individual in whom there is a metabolic disease in fat metabolism resulting in a persistently elevated serum cholesterol,'' which was unrelated to his employment. He expressed the opinion that the employment of the petitioner played a part to some extent in aggravating the disease but he did not think the same was industrial.

Arteriosclerosis appears to be a part of the aging process and may be aggravated or contributed to or hastened by overweight, smoking, excessive consumption of ''solid'' fats, and heredity. Dr. Miley stated: ''It has been found that groups whose diet has been habitually high in the percentage of saturated fats of initial origin show a much higher incidence of the complications of arteriosclerosis than groups with a normal or low fat intake. . . .

''Metabolic derangements, either familial or unique to the individual resultant in high serum cholesterol levels, total blood fat and particularly those whose blood serum reveals excessive concentration of lipo protein . . . are prone to reveal a much higher incidence of coronary heart disease than the normal population.''

Generally, in times of excessive emotion, mental or physical stress or strain, when the heart is not obtaining the necessary greater blood supply, the result is a condition known as ''heart insufficiency.'' In the case at bar, the petitioner did sustain an acute attack of heart insufficiency. The State Fund paid for the resulting temporary disability and medical treatment, raising no issue in that respect, and the State Fund accepted

the attack of heart insufficiency as industrial. The State Fund contends that such an angina episode does not affect the underlying arteriosclerotic disease, but after the episode subsides the patient can return to his former condition. It urges that if the employment caused the angina episode it would be an industrial injury entitling the employee to medical benefits for temporary disability but not to indemnity for permanent disability by reason of disability due to the underlying disease if it were nonindustrial.

After filing an application with the Industrial Accident Commission, the matter was heard and submitted for decision. The findings and award included, among other things, that the petitioner, while employed as a police officer from July 8, 1952, to January 24, 1963, sustained injury arising out of and occurring in the course of his employment, consisting of injury to his heart; that said injury resulted in permanent disability which, after apportionment, amounted to 26¾ per cent, entitling him to $52.50 per week for 107 weeks; that he was in need of further treatment, 40 per cent of which was to be apportioned to the injury in issue; and that 40 per cent of his self-procured medical treatment was to be apportioned to the injury for which he was entitled to be reimbursed. Afterwards, he petitioned for reconsideration, which was denied, and he filed this petition for writ of review.

In the request by the referee for a permanent disability rating he set forth that the rating was to be based on ''Disability to heart limits applicant to work described as half way between light and sedentary. Apportion 40 per cent to the injury herein.'' The permanent disability rating specialist recommended: ''The recommended rating after apportionment is 26¾% . . .'' based on a permanent disability rating of 67 per cent.

The question before us is: Whether Labor Code section 3212.5 permits the Industrial Accident Commission to apportion a heart condition to nonindustrial or preexisting causes in a situation where the employee meets all the requirements of the statute and does in fact sustain heart trouble under the conditions set forth therein. Or, stated in another way: Is the commission precluded by law from finding that any part of the permanent disability is not the result of industrial injury? Is the commission barred from determining the extent of the industrial heart trouble consisting of the aggravation of a disease and thus, must the commission find that all of the permanent disability shall be charged against

the employer at the time of the manifestation of his heart trouble"

Labor Code section 3212.5 provides in part: "In the case of a member of a police department of a city or municipality, . . . when any such member is employed under civil service upon a regular, full-time salary . . . , the term 'injury' as used in this division includes heart trouble . . . which develops or manifests itself during a period while such member . . . is in the service of the police department, . . .

"Such heart trouble . . . so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; . . . This presumption is disputable and may be controverted by other evidence, but unless so controverted, the commission is bound to find in accordance with it.

"Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation." (The last sentence quoted above was added by the 1959 Legislature.)

In *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (*Quick*), 56 Cal.2d 681, at page 685 [16 Cal.Rptr. 359, 365 P.2d 415], the court stated: "However, for the reasons appearing below, we are persuaded that section 3212.5 of the Labor Code pertains not to apportionment, but to the cause of injury currently sustained." The court went on to say (pp. 685-686): "In order to be compensable under the Workmen's Compensation Act, an injury must have resulted from the effects of employment covered by the act, that is, it must be an industrial injury. (*Goodwill Industries* v. *Industrial Acc. Com.*, 114 Cal.App.2d 452, 457 [250 P.2d 627].) The provisions of section 3212.5 prior to the 1959 amendment created a disputable presumption in favor of certain public employees to the effect that a heart attack occurring during the term of employment resulted from the effects of that employment and was therefore an industrial injury. It was, and still is, possible to rebut such presumption by adducing medical testimony to the effect that a heart attack was caused by progressive, arteriosclerotic heart disease which was nonindustrial. The 1959 addition to section 3212.5 pertains to the cause of a current industrial injury, after it is settled that the injury is an industrial one. It does not pertain to the percentage of disability which the instant heart attack considered by itself caused. It does not say that no part of Mr.

Quick's present total disability shall be attributable to his prior heart disease. It states only that no part of the manifestation of his current heart injury, that is, the 1959 heart attack, shall be attributable to the prior disease. Had the amendment been in effect when Mr. Quick suffered his 1955 injury, for instance, the commission could not have attributed one-half of that injury to the prior existing disease. The effect of the amendment is to make section 4663 (aggravation of prior disease, see footnote 1) inapplicable in the specific situations enumerated in section 3212.5, of which the case at bar is one.''

State Fund relies upon *Havel* v. *Industrial Acc. Com.*, 154 Cal.App.2d 737 [316 P.2d 680], for its views as stated in its brief, as follows: ''The angina episode does not affect the underlying arteriosclerotic disease. After the episode subsides, the patient usually returns to his former condition. If employment caused the angina episode, it would be an industrial injury entitling the employee to medical benefits and indemnity for temporary disability. However, he would not be entitled to indemnity for permanent disability by reason of disability due to the underlying disease if it were non-industrial.''

However, that case was decided in 1957, prior to the 1959 legislative amendment to section 3212.5 and applies to the facts of that case in the light of the law as it then existed. Language borrowed from the case of *Rodman* v. *Superior Court*, 13 Cal.2d 262, at page 268 [89 P.2d 109], is pertinent: ''In the face of the plain provisions of the statute as amended, it is clear that any declaration of the law contained in the cited case that ordinarily might be appropriate to the situation here disclosed, but which declaration of the law is in conflict with the express terms of the amended statute, has no controlling force in the present controversy.''

The case of *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (*Quick*), *supra*, 56 Cal.2d 681, decided after the 1959 amendment, is now controlling.

No issue was made by the State Fund as to the payment of temporary disability, medical treatment, etc., nor is there any issue made that such heart attack was not industrial. It is State Fund's contention that the heart attack as such did not result in permanent disability but that the permanent disability was caused by the progressive underlying disease. However, the petitioner contends that the commission must find that all of his permanent disability shall be charged

against the employer at the time of the manifestation of the heart trouble.

While the *Quick* case pertains to the overlapping disability cases where there has been a rating on a previous disability, this situation is not presented in the case before us.

In volume 53, California Law Review, page 279, at page 296, the author states: "The relation between the aggravated disease cases and the mere overlapping disabilities cases is perfectly illustrated by *State Comp. Ins. Fund* v. *Industrial Acc. Com. (Quick)*." The *Quick* case states that Labor Code section 4663[1] is inapplicable in the situations enumerated in section 3212.5.

In the present case the State Fund did present evidence as to the disputable presumption contained in section 3212.5 with various doctors testifying that the petitioner had arteriosclerosis, but as we read the finding of the commission that Mr. Ferris did have a heart attack, the rating was based on the apportionment of the referee.

■ "It is well established that the finding of the commission as to the cause of disability is conclusive upon review when supported by substantial evidence. (Lab. Code, § 5953; *Stoll* v. *Industrial Acc. Com.*, 20 Cal.2d 440, 445 [126 P.2d 865]; *Abelseth* v. *Industrial Acc. Com.*, 8 Cal.App.2d 270, 274 [47 P.2d 516].)" (*Havel* v. *Industrial Acc. Com., supra*, 154 Cal.App.2d 737, 742.)

As mentioned above, it is noted that the State Fund is not questioning that the heart attack was industrial.

State Fund next challenges the constitutionality of the 1959 amendment to section 3212.5. In support of its contention it makes a three-pronged argument: that the amendment is unconstitutional per se; that it is unconstitutional when applied to employees of charter cities; and that it sets up an unreasonable classification.

A similar situation with regard to a fireman assigned to duties of office work, clerical and stenographic, similar to those of the petitioner, being classified as a fireman is discussed in the case of *City & County of San Francisco* v. *Industrial Acc. Com.*, 142 Cal.App.2d 494, 500 [298 P.2d 651], where the city claimed that such classification was unreasonable, but the court did not agree. The question of the reasonableness of

---

[1] "Section 4663. In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

434

such classification is directly answered by that case. We hold that article XX, section 21, of the California Constitution is sufficient to uphold the constitutionality of section 3212.5.

The State Fund also presents the proposition that section 3212.5 is unconstitutional with respect to employees of chartered cities when it is applied in accordance with the petitioner's contention that the entire permanent disability must be attributed to the heart attack. This matter is discussed in *Healy* v. *Industrial Acc. Com.*, 41 Cal.2d 118, at page 122 [258 P.2d 1], where it is held that if "there is any conflict between charter provisions and the compensation sections of the Labor Code, the latter must prevail," and further stated: "Under power expressly granted to it by the Constitution, the Legislature has established a complete system of workmen's compensation which obviously is a subject of state-wide concern, and it is well settled that in such matters the general law is paramount." The above case is cited with approval in *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 293 [32 Cal.Rptr. 830, 384 P.2d 158], along with many other authorities.

 Therefore, we have concluded that the referee should not have made an apportionment based on the arteriosclerotic condition of the petitioner.

The award is annulled and the cause remanded to the commission with directions to make an award conforming to the views expressed herein.

Brown (Gerald), P. J., and Coughlin, J., concurred.

The petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied December 1, 1965.