[Civ. No. 24421. First Dist., Div. Four. Jan. 31, 1968.]

CHARLES C. TURNER, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, CITY OF FORT BRAGG et al., Respondents.

Robert H. Heeb for Petitioner.

Everett A. Corten, Rupert A. Pedrin, T. Groezinger, Loton Wells, F. G. Loughrey and A. C. Jones for Respondents.

Carroll, Davis, Burdick & McDonough and Philip Paul Bowe as Amici Curiae on behalf of Respondents.

RATTIGAN, J.—Petitioner suffered a heart attack while on duty as a police officer in the employ of respondent City. Claiming industrial injury, he applied for benefits under the workmen's compensation law. (Lab. Code, div. 4 [commencing with § 3201].)[1] After a hearing and examination of medical evidence in the form of written reports, respondent Board's referee ordered that petitioner take nothing. Respondent Board denied his petition for reconsideration, and we granted review.

Petitioner's heart attack occurred during the early morning hours of March 26, 1966. The preceding day, March 25 had been his day off. On the morning of March 25, he went abalone fishing, which involved free diving and prying abalones from rocks. He spent the balance of the day and evening restfully, and went to work on the night police shift at midnight.

His duties thereafter were not strenuous. The heart attack commenced at about 2:30 a.m. on March 26, when he experienced severe chest pains while engaged in conversation with a night employee in a bakery. Although the pains persisted, he remained on duty until his shift ended at 8 a.m. The pains became worse after he went off duty, and he was hospitalized at 11 a.m. on March 26. His application for workmen's compensation benefits followed.

The only evidence in the record relative to the cause of petitioner's heart attack is in two written reports by William S. Breall, M.D. Dr. Breall examined petitioner on behalf of respondent State Compensation Insurance Fund, respondent City's insurance carrier, and reported as its witness. In his report dated October 29, 1966, Dr. Breall expressed the opinion that petitioner's heart attack was not an industrial injury, but was attributable to a pre-existing arteriosclerotic

---

[1] Although not specified in every instance, all statutory references herein are to the Labor Code.

heart disease of long standing. The report states in part as follows:

"[T]here is no doubt that Mr. Turner suffered from an acute myocardial infarction while at work on March 26, 1966. This myocardial infarction was most likely spontaneous in origin, superimposed on an old and long-standing arteriosclerotic coronary artery. . . . The occurrence of this acute infarction came about during a time when Mr. Turner was working. I feel that it occurred entirely coincidental to and not caused by his work as a police officer. I say this because Mr. Turner was not engaged in any degree of maximal physical exercise at the time that the myocardial infarction occurred. . . . In going over the detailed activities that Mr. Turner underwent during the twenty-four hours prior to hospitalization, I cannot find that he had done anything of an unusual or excessive nature with respect to physical or emotional exertion during this period of time. Because of this, I cannot see how Mr. Turner's occupation contributed to his myocardial infarction at all. . . . I, therefore, repeat that I feel his myocardial infarction was one that occurred spontaneously and was entirely unrelated to his occupation as a policeman. Furthermore, there is no evidence that the continuation of his occupation for the remainder of his shift resulted in cardiac deterioration. . . ."

The referee, relying upon Dr. Breall's opinion, determined that petitioner's heart injury was nonindustrial and ordered that he take nothing. Respondent Board denied reconsideration upon the stated ground that Dr. Breall's opinion had rebutted the presumption of industrial causation raised by Labor Code section 3212.5. The controversy here requires an interpretation of section 3212.5 and, in particular, the amendment thereof by the 1959 Legislature. In relevant part,[2] the section reads as follows (the 1959 amendment shown in added italics):

"3212.5. In the case of a member of a police department of a city . . . the term 'injury' . . . includes heart trouble . . . which develops or manifests itself during a period which such member . . . is in the service of the police department. . . . The compensation which is awarded for such heart trouble

---

[2]Portions of section 3212.5 not shown here define those city policemen who are affected by the statute in terms of their salary and civil service status. It is not disputed upon this review that petitioner is covered by the statute in such respects, and that the presumption of industrial causation arose in this case.

. . . shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits. . . .

"Such heart trouble . . . so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the member of the police department . . . shall have served five years or more in such capacity before the presumption shall arise. . . . This presumption is disputable and may be controverted, but unless so controverted, the appeals board is bound to find in accordance with it.

"*Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation.*"

The question presented is whether, since the 1959 amendment of the statute, the presumption of industrial causation of a policeman's in-service heart trouble may be rebutted by evidence of preexisting heart disease.

Respondent Board contends that the Supreme Court has resolved this question in *State Comp. Ins. Fund* v. *Industrial Acc. Com. (Quick)* (1961) 56 Cal.2d 681, where it is stated (p. 685 [16 Cal.Rptr. 359, 365 P.2d 415]) that "The provisions of [Labor Code] section 3212.5 prior to the 1959 amendment created a disputable presumption in favor of certain public employees to the effect that a heart attack occurring during the term of employment resulted from the effects of that employment and was therefore an industrial injury. It was, *and still is,* possible to rebut such presumption by adducing medical testimony to the effect that a heart attack was caused by progressive, arteriosclerotic heart disease which was nonindustrial." (Italics added.)

We conclude, however, that the *Quick* decision is not controlling here. In that case Quick, a deputy sheriff covered by Labor Code section 3212.5, experienced a heart attack in 1955. Upon his application for workmen's compensation benefits at that time, the Industrial Accident Commission (respondent Board's predecessor) found that he was 43½ percent disabled, one-half of which condition was attributed to a preexisting, nonindustrial heart disease. Quick therefore received an award for the 21¾ percent of permanent disability which was due to "industrial aggravation." (56 Cal.2d 681 at p. 683.)

In 1959, Quick suffered a second heart attack which was "industrially connected" (*id.*), and which resulted in total disability. The commission this time took the position that any

apportionment of full benefits was precluded by the 1959 amendment to Labor Code section 3212.5, and awarded full benefits to Quick without deducting for the prior disability sustained from the 1955 attack.[3]

Upon review, the Supreme Court first (56 Cal.2d at p. 684) cited and quoted Labor Code sections 4663[4] and 4750[5] as the "statutes governing apportionment generally." The court went on to hold (p. 686) that the effect of the 1959 amendment was to make section 4663 (aggravation of prior disease) inapplicable to the employees mentioned in section 3212.5; that section 3212.5, dealing with "pathological cause," was not in conflict with section 4750, which dealt with "apportionment to prior permanent disability"; and that section 4750, notwithstanding—and unaffected by—the 1959 amendment to section 3212.5, therefore required that Quick's award be apportioned by deducting therefrom the prior permanent disability factor of 43½ percent. Accordingly, the court annulled the commission's 100 percent award and, remanding, directed an award in the amount of 56½ percent of Quick's total disability.[6]

The question before us—whether the section 3212.5 presumption may be rebutted by evidence of pre-existing disease

---

[3]The *Quick* decision points out (56 Cal.2d at pp. 683-684) that the commission "made no apportionment for the prior [1955] injuries but did allow a 'credit' of $2,610, which was the amount of the award for the percentage (21¾ per cent) of Mr. Quick's prior permanent partial disability then attributed to industrial aggravation." It thus appears that the commission in effect apportioned its award to reflect the industrial component of the earlier award, but refused to apportion only for the earlier nonindustrial disability factor (i.e., for the 21¾ percent attributed to nonindustrial heart disease after the 1955 injury).

[4]"4663. In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

[5]"4750. An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

[6]The court, however, stated that Quick, thus limited to a 56½ percent award for the 1959 disability, was entitled "to retain and to continue to receive the compensation awarded him for his 1955 attack." (56 Cal.2d at pp. 686-687.) The 1955 compensation, as previously stated (see footnote 3, *supra*) reflected the industrially caused one-half portion of the 1955 disability. Therefore, the result reached by the court effected an apportionment for the prior nonindustrial disability only.

—relates only to the *cause* of petitioner's "heart trouble." In the *Quick* case, it was not disputed that the employee's in-service heart attack was industrially caused. Accordingly, we first distinguish the *Quick* decision upon the ground that the question presented here was not before the court in that case.

We may also distinguish *Quick* by examining the issue it actually resolved and the result it avoided. Quick had received a 21¾ percent disability rating, and had been compensated accordingly, for his 1955 heart attack. After his second attack in 1959, the Industrial Accident Commission rated his disability—attributable thereto—at 100 percent, and awarded him full benefits, without apportioning to deduct the previous 21¾ percent. The Supreme Court, then, faced the prospect that under the commission's interpretation of the 1959 amendment to Labor Code section 3212.5, Quick would receive benefits reflecting a combined rating of 121¾ percent.

In *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.* (*Burton*) (1954) 126 Cal.App.2d 554 [272 P.2d 818], the court had affirmed a 77 percent disability rating for a 1951 injury although it produced, in combination with a 25½ percent rating received by the same employee for a 1942 injury, a combined total of 102½ percent disability. The *Burton* court held that Labor Code section 4750 required an isolated rating of the second disability, despite the combined total it produced, because the successive injuries—which affected different parts of the employee's body—were independent of each other and did not overlap. (See discussion of *Burton* in *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*) (1963) 59 Cal.2d 45, 50-51, 53 [27 Cal.Rptr. 702, 377 P.2d 902].)

. Unlike the Burton situation, the commission's award in *Quick* would have produced a combined rating in excess of 100 percent where the employee's successive heart injuries were identical except in severity, where his prior and subsequent disabilities did overlap, and where both involved the same pre-existing, nonindustrial heart disease. The *Quick* court, refusing to permit a *Burton* result under the wholly different circumstances mentioned, avoided such result by requiring an apportionment. (See discussion of *Quick* in *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, *supra*, 59 Cal.2d at pp. 53-54.) We conclude that the actual effect of the *Quick* decision is to require apportionment of an award to a section 3212.5 employee for disability caused by industrial "heart trouble," by deducting for pre-existing, nonindustrial heart disease, where—but only where—the disability overlaps a pre-

vious disability which has been rated for purposes of workmen's compensation.

The *Quick* case was similarly distinguished in *Ferris* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 427 [46 Cal. Rptr. 913]. Ferris, a city policeman covered by Labor Code section 3212.5, suffered a "heart insufficiency" (pp. 429-430). There was medical evidence (p. 429) that his employment aggravated a nonindustrial arteriosclerotic condition. The injury produced a 67 percent disability. The Industrial Accident Commission apportioned 40 percent thereof to industrial injury and 60 percent to the nonindustrial disease. The consequent permanent disability rating, after the apportionment, was 26¾ percent. Upon review the court, holding that the *Quick* decision's interpretation of the 1959 amendment to section 3212.5 precluded an apportionment under section 4663, remanded to the commission with directions to make an award at the full rating of 67 percent.

The *Ferris* court, refusing to permit an apportionment as had been required in the *Quick* case, found it necessary to distinguish the latter in reaching the opposite result. The distinction was expressed in this language: "While the *Quick* case pertains to the overlapping disability cases *where there has been a rating on a previous disability*, this situation is not presented in the case before us." (237 Cal.App.2d 427 at p. 433; emphasis added.) We distinguish *Quick* upon the same ground.

Since the *Quick* decision is not controlling here for the reasons noted, we refer to the plain language of Labor Code section 3212.5 as amended in 1959. Prior to 1959 and now, the presumption of industrial causation of a city policeman's in-service heart trouble is disputable and controvertible by "other evidence." But, with the 1959 amendment embodied in the statute's last sentence, the Legislature provided that the heart trouble shall "in no case be attributed" to a pre-existing heart disease.

Two principles guide our construction of section 3212.5 as amended. ■ The first is the general rule that workmen's compensation statutes are to be construed liberally in favor of awarding compensation. (Lab. Code, § 3202; *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296].) ■ Secondly, words in a statute should be given their ordinary meaning and receive sensible construction in accord with the commonly understood meaning thereof. (*County of Los Angeles* v. *Frisbie* (1942) 19

Cal.2d 634, 642 [122 P.2d 526]; *Hom* v. *Clark* (1963) 221
Cal.App.2d 622, 638 [35 Cal.Rptr. 11].)

 Paraphased in terms of the "commonly understood
meaning" of the word "attributed" in section 3212.5 as
amended, the statute provides that a policeman's in-service
heart trouble shall *in no case* be "explained *as caused* or
brought about by" a preexisting disease. (See, e.g., Web-
ster's Third New International Dictionary (1967) p. 142;
italics added.) Directed by this plain language, we hold
that under the 1959 amendment the statutory presumption
cannot be rebutted by evidence of preexisting heart disease,
as distinguished from "other evidence" that the in-service
heart trouble was not industrially caused.[7]

The manifest purpose of section 3212.5 prior to the 1959
amendment was to favor a class of public employees whose
service is both vital to the public interest and hazardous to
heart health. The favored class included Deputy Quick (*State
Comp. Ins. Fund* v. *Industrial Acc. Com. (Quick), supra,* 56
Cal.2d 681) and Officer Ferris (*Ferris* v. *Industrial Acc.
Com., supra,* 237 Cal.App.2d 427), and it includes petitioner.
Each had a prior heart disease. Each had heart trouble in
service. But Deputy Quick received a partial award. Officer
Ferris received a full award. If we follow respondent Board's
interpretation of section 3212.5 as amended, petitioner would
take nothing.

We are mindful of the interplay of Labor Code sections
4663 and 4750 in these situations, as discussed in the *Quick*
and *Ferris* decisions: but we consider it unlikely that the
progression of results cited above, or the disparity among
such results, was intended by a legislature which provided
that heart trouble, in the case of any of the three officers, was
not to be "attributed" to prior disease at all. We conclude,
rather, that the 1959 Legislature intended to pursue the origi-
nal purpose of section 3212.5, and to improve its effect upon
the favored employee class, by amending it to preclude con-

---

[7] An illustration of "other evidence" of nonindustrial causation, which
may still rebut the section 3212.5 presumption under the 1959 amend-
ment, was suggested in the present case by Dr. Breall's finding that peti-
tioner, during the 24 hours preceding his hospitalization, did nothing
"of an unusual or excessive nature with respect to physical or emo-
tional exertion." Under appropriate circumstances, for example, Dr.
Breall might have "attributed" the March 26 heart attack to the non-
industrial "exertion" involved in petitioner's abalone fishing on March
25.

sideration of prior heart disease as a cause of in-service heart trouble, and against the presumption, in any case.

In the present case, there is no evidence of nonindustrial causation of petitioner's heart attack other than Dr. Breall's opinion attributing it to prior arteriosclerotic heart disease. Under our holding, petitioner's heart trouble may not be so "attributed." The order under review must therefore be annulled, and it remains for respondent Board to rate the degree of petitioner's permanent disability and to award him full benefits based upon such rating.

The order denying reconsideration is annulled and the cause is remanded to the Workmen's Compensation Appeals Board for further proceedings in conformity with the views expressed herein.

Devine, P. J., and Christian, J., concurred.

The petitions of the respondents Workmen's Compensation Appeals Board and State Compensation Insurance Fund for a hearing by the Supreme Court were denied April 17, 1968.