[Civ. No. 11746. Third Dist. Nov. 22, 1968.]

STATE EMPLOYEES' RETIREMENT SYSTEM, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and DONNA V. McNERNEY, Respondents.

612

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Petitioner.

Everett A. Corten, Rupert A. Pedrin, C. V. McCluskey and Panattoni, Farrell & Gibbert for Respondents.

FRIEDMAN, J.—The State Employees' Retirement Law provides a special death benefit for the widow or child of a forestry member whose death, as determined by the Workmen's Compensation Appeals Board, is industrial. (Gov. Code, § 21363.5.) A referee of the Workmen's Compensation Appeals Board awarded the death benefit to the widow of June B. McNerney, finding that Mr. McNerney's death was work-connected. The board denied reconsideration. This court issued a writ of review at the behest of the State Employees' Retirement System.

In determining the question of industrial causation, the WCAB is directed to use the same procedure as in workmen's compensation hearings. (Gov. Code, § 21363.5.) A provision of the Workmen's Compensation Law, Labor Code section 3212, applies to specified categories of public employees, including active firefighting members of the State Division of Forestry, extending its coverage to "heart trouble which develops or manifests itself" during employment with the public agency; establishing a disputable presumption of occupational causation as to heart trouble "so developing or manifesting itself" and prohibiting attribution to a preexisting disease when these conditions exist. Relevant portions of section 3212 appear in the margin.[1]

---

[1]Labor Code, section 3212: "[I]n the case of active firefighting members of the Division of Forestry whose duties require firefighting . . . the term 'injury' includes . . . heart trouble which develops or manifests

The referee found that Mr. McNerney had been an active firefighting member of the State Division of Forestry at the time of his death; that his death on February 28, 1964, was proximately caused by ''heart trouble'' which arose from his employment; that his duties required firefighting and he was entitled to the presumption of employment causation described in section 3212, *supra.* The Retirement System contends (a) that the medical evidence does not support the finding of employment causation, (b) that McNerney held a desk job and was not entitled to the statutory presumption, (c) that in any event the presumption vanished upon the introduction of contrary medical evidence.

McNerney had suffered rheumatic fever when he was about 6 years old, with recurring attacks at the ages of 13 and 21. He went to work for the State Division of Forestry in 1935 and, except for two years with another state agency, remained there until his death. Since 1947 he had been employed as a dispatcher with the duty of sending crews and equipment into areas where forest fires were in progress. He operated a radio and prepared fire plans. During the fire season, April 15 to November 15, he was on 24-hour call. During a fire he would secure men, supplies and equipment from different districts and direct them to the points of need. At times of shortage, he would be called upon to establish priorities of need. He worried over the responsibility of sending men into danger. He worked either from his office or from his home telephone. He would be called at night to dispatch if needed. Like others engaged in the firefighting program, he received a 10 percent pay differential during the fire season for being on call. He suffered an acute heart attack in 1962. It occurred while he was on the stairway leading to his office in the Division of Forestry. In February 1964 he died of congestive heart failure. He was 58 years old at the time.

Herbert S. Burden, M.D., the family physician who had treated McNerney during his lifetime, signed the death cer-

---

itself during a period while such member is in the service of such office, department or unit. . . .

''Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it.

''Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation.''

tificate, giving the cause as "Acute Cardiac Decompensation due to Rheumatic Heart disease—Mitral Insufficiency." No autopsy was performed. In reports filed with the referee, Dr. Burden stated that McNerney had had heart trouble all his life and expressed the opinion that his employment was not a factor in his death.

James M. Reece, M.D., a specialist in internal medicine, testified at the hearing. Although he had never seen McNerney, he had examined Dr. Burden's files, which included a medical history as well as X-rays and electrocardiograms taken after the acute attack of 1962. He said that the electrocardiograms gave no evidence of arteriosclerosis, infarction or occlusion, but were consistent with scarring of the mitral valves attributable to the rheumatic fever attacks suffered years earlier. A systolic heart murmur was noticed in 1954, which also indicated valvular deficiency. The 1962 X-rays showed enlargement of the heart. Having heard the description of McNerney's occupational duties, he expressed the opinion that the work did not subject the decedent to any undue stresses and that the job was probably rather sedentary. He did not believe that arteriosclerosis played any part. In his opinion decedent's work had nothing to do with his death and his occupation had nothing to do with his long-standing cardiac disease, which was attributable to multiple attacks of rheumatic fever.

Elise M. Rose, M.D., also furnished a report. She had never seen the decedent nor had she reviewed Dr. Burden's file containing the medical history, X-rays and electrocardiograms. The data for Dr. Rose's opinion consisted of (a) an interview with McNerney's widow detailing the stressful character of her husband's occupation, (b) a short statement by Burden in which he reiterated his assertion of nonoccupational causation, and (c) a preemployment physical examination in 1947 which indicated cardiac normalcy. Dr. Rose's report expressed the view that McNerney's stressful job contributed to the development of coronary atherosclerosis, which was the cause of death. She completely discounted rheumatic fever as a contributing factor. Both the referee and the Workmen's Compensation Appeals Board concluded that Dr. Rose's report created a conflict in the medical evidence, which they resolved in favor of the claimant.

First, there is the question whether McNerney was an "active firefighting member" within the coverage of section

3212. Section 3212 is a part of the Workmen's Compensation Law, whose provisions are to be liberally construed in the claimant's favor. (Lab. Code, § 3202; *Lundberg* v. *WorkMen's Comp. App. Bd.*, 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300].) The process of firefighting includes persons performing tactical and logistic functions as well as those who physically extinguish the flames. The preparation of fire plans and the dispatch of personnel and equipment are integral to the process. The statute does not confine itself to those who physically extinguish the flames; rather, it comprehends "active firefighting members . . . whose duties require firefighting." The notion is a transient one, progressing back from the fire line to some undetermined point in the tactical-logistic activities. McNerney's functions were such that the WCAB found him in the covered category. (Cf. *Buescher* v. *Workmen's Comp. App. Bd.*, 265 Cal.App.2d 520, 532-533 [71 Cal.Rptr. 405].) A court cannot say, as a matter of law, that this finding is without substantial support in the evidence.

Dr. Elise Rose's report is the only medical evidence which supports the finding of employment causation. On behalf of the Retirement System, the Attorney General contends that Dr. Rose's report does not rise to the level of substantial evidence. The contention is quite justified. At the hearing the Attorney General objected to evidentiary use of Dr. Rose's statement. The referee overruled the objection, stating that a "higher court" might eventually consider it. Both the referee and the WCAB then took the position that Dr. Rose's report created a conflict in the medical evidence. Actually, Dr. Rose's opinion had no probative value, because the doctor had not acquired the data essential to the formulation of a credible medical opinion. (*Jones* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648]; *Bussa* v. *Workmen's Comp. App. Bd.*, 259 Cal. App.2d 261, 267 [66 Cal.Rptr. 204].) From a reviewing court's viewpoint, Dr. Rose's opinion does not amount to substantial evidence, inspiring no confidence and having no solid value (*People* v. *Bassett*, 69 Cal.2d 122, 139, 141 [70 Cal.Rptr. 193, 443 P.2d 777].)

The record, then, is bare of acceptable medical evidence to support the referee's finding of employment causation. Sole possible support for the finding is the disputable presumption of occupational causation described in section 3212. Also

significant is the last sentence of section 3212, prohibiting heart trouble's attribution to preexisting disease in certain cases. The last sentence of section 3212 was added by a 1959 amendment. It is identical to a 1959 amendment to Labor Code section 3212.5, a parallel statute affecting law enforcement personnel.

The Retirement System argues that the disputable presumption in 3212 is not evidence, rather that it disappears when countervailing evidence (here, evidence of a heart condition antedating employment) is introduced. The argument ignores the 1959 amendment. The decisions construing sections 3212 and 3212.5 declare that the 1959 amendment prohibits evidence of preexisting heart disease to rebut the presumption of employment causation. (*Turner* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 442, 448-449 [65 Cal. Rptr. 825]; *Bussa* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d at pp. 265-266; see also *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (*Quick*) 56 Cal.2d 681, 685-686 [16 Cal. Rptr. 359, 365 P.2d 415]; *Ferris* v. *Industrial Acc. Com.,* 237 Cal.App.2d 427, 431-433 [46 Cal.Rptr. 913]; *Buescher* v. *Workmen's Comp. App. Bd., supra,* 265 Cal. App.2d at pp. 533-534.) In these decisions, however the courts had little occasion to consider the conditions which would bar the presumption or permit its rebuttal by evidence of preexisting disease.

The statutory presumption arises in the case of heart trouble "developing or manifesting itself" during employment with the public agency. The referee and the WCAB made no express finding as to the time of development or manifestation of Mr. McNerney's heart ailment. The parties are entitled to such a finding.(*Buescher* v. *Workmen's Comp. App. Bd., supra,* 265 Cal.App.2d at p. 534.) The findings filed by the referee did include a conclusionary statement declaring the presumption's applicability. Such a statement fairly implies a finding of the facts upon which the presumption rests. Even though the referee's statement is the equivalent of a finding of in-service "development or manifestation," such a finding is as ambiguous as the quoted phrase itself.

Obviously, heart disease may develop without manifesting itself. It may develop as an unrecognized, undiagnosed, asymptomatic condition, displaying or manifesting itself only after the commencement of employment. (See, e.g., *Reynolds*

*Elec. etc. Co.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 438 [55 Cal.Rptr. 254, 421 P.2d 102]; *Turner* v. *Workmen's Comp. App. Bd., supra,* 258 Cal.App.2d 442.) Where such is the case, it might be argued that in-service manifestation is a reason for invoking the presumption or that preemployment development is a ground for barring it. Such arguments would simultaneously place the ailment within and outside the operative phrase on which the presumption depends. The overlapping and partially contradictory character of the statutory alternatives creates an ambiguity requiring construction.[2] The ambiguity exists because the language is reasonably susceptible of several meanings. (See *Pacific Gas & Elec.* v. *G. W. Thomas etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561. 442 P.2d 641].)

As noted earlier, such statutory provisions are to be liberally construed in the claimant's favor. Section 3212 is designed to favor a class of public employees by restricting preemployment heart disease as a factor preventing compensations for in-service "heart trouble." (*Turner* v. *Workmen's Comp. App. Bd., supra,* 258 Cal.App.2d at p. 449.) This objective is frustrated by postulating in-service manifestation as a condition activating the presumption and preemployment development as a condition barring it. More in keeping with the statutory objective is the interpretation that *either* event, development or manifestation during employment, will activate the presumption; that only where *both* events, development and manifestation, precede the employment, is the presumption unavailable.

The same phraseology characterizes the 1959 amendment and the same interpretation should prevail. Under this interpretation, either in-service development or in-service manifestation will activate the prohibition against attribution to preexisting disease.[3] Such an interpretation favors the employee who comes to the job with no preemployment history of cardiovascular ailment. It is consistent with the general

---

[2]This ambiguity characterizes each of the three clauses of section 3212, i.e., the initial coverage clause, the disputable presumption clause and finally, the 1959 amendment limiting attribution to preexisting disease. In each of these clauses the phrase "develops or manifests" describes the alternative conditions which will activate that particular clause.

[3]The disputable presumption and the 1959 amendment prohibiting its rebuttal by evidence of preexisting disease are not coextensive, however. The employer may properly attempt to rebut the presumption by evidence other than proof of preexisting disease. (*Bussa* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d at p. 265.)

concept of workman's compensation law that, as to preexisting conditions, the employer takes the applicant as he finds him. (*Buescher* v. *Workmen's Comp. App. Bd., supra,* 265 Cal.App.2d at p. 533.) It does not however, prevent an employer from resorting to evidence of heart disease recognized as such (i.e., developed and manifested) preceding the employment.

 Although the findings in this case are inadequate, the award will not be annulled if it is supported by any valid ground. (*Martin* v. *Industrial Acc. Com.,* 82 Cal.App.2d 737, 740 [187 P.2d 101].) Mr. McNerney commenced the covered employment in 1947. A physical examination report signed by Dr. Burden and filed with the State Personnel Board in January 1947, indicated normality of the heart and cardiovascular system. Not until the acute attack of 1962, 15 years after commencement of employment with the Division of Forestry, was there any manifestation of the heart condition which resulted in his death in 1964. At the time of the 1962 attack, the patient related a history of early rheumatic fever. Rheumatic fever is not heart disease, but an acute inflammation which occurs as a sequel to streptococcal infection and often, but not necessarily, results in cardiac impairment. (8 Cantor, Traumatic Medicine and Surgery for the Attorney (1962) pp. 673-687; 3 The Cyclopedia of Medicine and Surgery Specialties (F. A. Davis Co. 1966) pp. 757-762.) In actuality, according to the evidence, Mr. McNerney's attacks of rheumatic fever caused valvular lesions and scarring antedating the impairment. There was a preemployment development of heart "disease" but it did not manifest itself until 15 years after the employment commenced. The facts not only activated the statutory presumption of employment causation, but protected it from negation by the evidence of preexisting disease. Since there was no other evidence to rebut the presumption, the award must be affirmed.

So ordered.

Pierce, P. J., concurred.

REGAN, J.—I concur in the result reached herein.

The opinion does find that in keeping with the statutory objective that if heart trouble either develops or manifests itself during employment the presumption that it arose out of and in the course of the employment is activated and such heart trouble so developing or manifesting itself shall not be

attributed to any disease existing prior to such development or manifestation. From this point the opinion announces a limitation of *Turner* v. *Workmen's Comp. App. Bd.*, 258 Cal.App.2d 442 [65 Cal.Rptr. 825], and holds that if heart trouble had *both* developed and manifested itself prior to the employment then the statutory presumption found in section 3212 of the Labor Code is unavailable.

In *Turner, supra,* the court in construing section 3212.5 of the Labor Code (containing an identical statutory presumption as found in section 3212) states (at pp. 448-450): "Two principles guide our construction of section 3212.5 as amended. The first is the general rule that workmen's compensation statutes are to be construed liberally in favor of awarding compensation. (Lab. Code, § 3202; *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296].) Secondly, words in a statute should be given their ordinary meaning and receive sensible construction in accord with the commonly understood meaning thereof. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526]; *Hom* v. *Clark* (1963) 221 Cal. App.2d 622, 638 [35 Cal.Rptr. 11].)

"Paraphased [*sic*] in terms of the 'commonly understood meaning' of the word 'attributed' in section 3212.5 as amended, the statute provides that a policeman's in-service heart trouble shall *in no case* be 'explained *as caused* or brought about by' a preexisting disease. (See, e.g., Webster's Third New International Dictionary (1967) p. 142; italics added.) Directed by this plain language, we hold that under the 1959 amendment the statutory presumption cannot be rebutted by evidence of preexisting heart disease, as distinguished from 'other evidence' that the in-service heart trouble was not industrially caused.

"The manifest purpose of section 3212.5 prior to the 1959 amendment was to favor a class of public employees whose service is both vital to the public interest and hazardous to heart health. The favored class included Deputy Quick [citation] and Officer Ferris [citation], and it includes petitioner. Each had a prior heart disease. Each had heart trouble in service. But Deputy Quick received a partial award. Officer Ferris received a full award. If we follow respondent Board's interpretation of section 3212.5 as amended, petitioner would take nothing.

"We are mindful of the interplay of Labor Code sections

4663 and 4750 in these situations, as discussed in the Quick and Ferris decisions; but we consider it unlikely that the progression of results cited above, or the disparity among such results, was intended by a legislature which provided that heart trouble, in the case of any of the three officers, was not to be 'attributed' to prior disease at all. We conclude, rather, that the 1959 Legislature intended to pursue the original purpose of section 3212.5, and to improve its effect upon the favored employee class, by amending it to preclude consideration of prior heart disease as a cause of in-service heart trouble, and against the presumption, in any case.''

If we are to follow *Turner, supra,* in which case the California Supreme Court denied a hearing, we should hold that the 1959 Legislature, by amending sections 3212 and 3212.5 of the Labor Code, has precluded the consideration of prior heart disease as a cause of in-service heart trouble to rebut the presumption *in any case.*