[Civ. No. 24717. First Dist., Div. Four. Feb. 21, 1968.]

ALMA CAROLINE BUSSA et al., Petitioners, v. WORK-MEN'S COMPENSATION APPEALS BOARD, ACME FIRE EXTINGUISHER COMPANY et al., Respondents.

Carroll, Davis, Burdick & McDonough and Philip Paul Bowe for Petitioners.

Edward A. Goggin, City Attorney, George M. Cahalan, Assistant City Attorney, Mark B. Shragge, Deputy City Attorney, Everett A. Corten, Richard Swanson, Hanna & Brophy and Gerald L. Christensen for Respondents.

RATTIGAN, J.—Petitioners are the widow and minor children of George Hemingway, who died from a heart attack on May 16, 1963. Petitioners applied for death benefits under the workmen's compensation law, naming two alleged employers as defendants. After hearings, respondent board's referee ordered that petitioners take nothing as to either employer. Respondent board granted reconsideration but entered a decision after reconsideration affirming the referee's findings and order. We granted review.

For 15 years preceding his fatal heart attack, the decedent had been continuously employed in respondent city's fire department as a full-time fireman. The city is legally permitted to be, and is, uninsured for workmen's compensation purposes. For approximately six years, the decedent had also been employed by respondent Acme Fire Extinguisher Company (hereinafter "Acme"). Respondent The Travelers Insurance Company ("Travelers") appears herein as Acme's workmen's compensation insurance carrier.

The decedent worked as a fireman "one day on and two days off." His employment by Acme was a "moonlighting"[1] job, at which he worked irregular hours of his own choosing during his off-duty time with the fire department. His duties for Acme involved the pickup, refilling and delivery of fire extinguishers which Acme installed and maintained at various customer locations. He was holding both jobs when he died, but was actually working for Acme when the heart attack occurred. After he had gone off duty as a fireman at 8 a.m. on May 16, 1963, he went to work visiting fire extinguisher locations for Acme. The heart attack occurred at one such location, where he collapsed while handling extinguishers. His death was apparently instantaneous.

Shortly after her husband's death, petitioner Alma Bussa (who was then Alma Hemingway and who has since remarried) applied to respondent city for death benefits assertedly due her under its charter. On September 24, 1963, the city's Police and Fire Retirement Board awarded her a "disability

---

[1] The descriptive term is used here, as it was employed in the proceedings below with reference to the decedent's employment by Acme, in the sense of its dictionary definition, viz., "holding two jobs at once." (See, e.g., Webster's New International Dictionary (3d ed. 1967) p. 1467.)

death pension'' based upon its finding that the death was ''service connected.'' She and her children subsequently commenced the present proceeding for workmen's compensation benefits, naming both respondent city and Acme as defendants.

At hearings before the referee, evidence of the decedent's duties with respondent city's fire department was received. For several months before his death, he had been engaged in the typically hazardous and physically strenuous duties of firefighting, and was an active participant in the department's physical fitness program. It was also shown that he had been an underwater scuba diver and member of the ''sheriff's underwater rescue squad,'' which—although not further described in the evidence—was apparently a voluntary activity not required by the decedent's employment as a city fireman. In other personal sidelines, he had also engaged in the business of house wrecking from time to time, and more recently had been hand-collecting and lifting heavy rocks for installation in a wall at his home.

The referee received in evidence the report of a medical examiner who had performed an autopsy upon the decedent's remains. According to the autopsy report, death was caused by ''cardiac failure due to coronary atherosclerosis with occlusion, right coronary artery.''

Doctors Rosenman, Griffeath and DeSilva each testified concerning the cause of the decedent's fatal heart attack. Each testified, in substantial agreement with the autopsy report, that the cause of death was coronary atherosclerosis of long standing : i.e., a pre-existing heart disease.

The record is virtually bare of any specifics—in terms of the time or length of participation, or of the physical exertion involved—of the decedent's scuba diving, house wrecking or rock collecting. In any event, no medical witness was asked to assess such activities in relation to the heart attack, and none ascribed the attack to such activities. Each physician responded to various inquiries as to whether the decedent's lifting and carrying fire extinguishers, in the Acme job on the day of his death, caused his heart attack. We hereinafter discuss the evidence with respect to Acme.

The referee found that ''The decedent suffered no injury arising out of and in the course of the employment.'' Upon reconsideration, respondent board used this language in affirming the referee's findings and order : ''We are also of the opinion that the evidence does not support a finding that

the applicant's [*sic*] death resulting from a heart attack arose out of and occurred in the course of his employment with either the City of Oakland or Acme Fire Extinguisher Company.''

■ Challenging the findings as to respondent city, petitioners first point to the fact that its Police and Fire Retirement Board determined in 1963 that the decedent's death was ''service connected.'' This finding, they contend, is res judicata against the city on the issue of industrial causation in the present workmen's compensation proceeding. This argument was resolved against petitioners below, and it was not raised in their petition for reconsideration. For the latter reason, we cannot consider it here: points not raised upon petition for reconsideration before respondent board are finally waived and cannot be considered on review by this court. (Lab. Code, § 5904; *Alford* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 198, 206 [169 P.2d 641]; *Heath* v. *Workmen's Comp. App. Bd.* (1967) 254 Cal.App.2d 235, 238 [62 Cal.Rptr. 139]; 1 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1966) § 10.08 [6], p. 10-41.)

The question, therefore, is whether the evidence supports the findings of nonindustrial causation (1) as to respondent city and (2) as to Acme. As to respondent city, a statutory presumption arose, under section 3212 of the Labor Code, that the decedent's heart injury and death were caused by his employment as a city fireman. As amended in 1959, section 3212 provides in relevant part as follows (the 1959 amendment shown in added italics):

''3212. In the case of members of . . . fire departments of cities, . . . the term 'injury' . . . includes . . . heart trouble which develops or manifests itself during a period while such member is in the service of such . . . department. . . . The compensation which is awarded for such . . . heart trouble . . . , shall include full . . . death benefits, as provided by the workmen's compensation laws of this state.

''Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the commission is bound to find in accordance with it.

'' *''Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation.''*

 The referee and respondent board each took—and stated—the view that the presumption created by section 3212 arose in the present case, but that it had been rebutted by the medical evidence attributing the decedent's fatal heart attack to his pre-existing heart disease. However, in this court's recent decision in *Turner* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 442 [65 Cal.Rptr. 825], we held that under the commonly understood meaning of the word "attributed" in the 1959 amendment of Labor Code section 3212.5, the statutory presumption there created—that an affected municipal employee's in-service heart trouble was caused by his employment—could not be rebutted by evidence attributing it to (i.e., explaining it as having been "caused or brought by") a pre-existing heart disease.

In the present case the essential facts, the nature of the municipal employment, and the statute involved are for practical purposes the same as in *Turner*, and the language and effective date of the decisive amendment are *identical*.[2] Our reasoning in *Turner*, and the result reached, therefore control here. Accordingly, we hold that the medical evidence attributing the decedent's fatal heart attack to coronary atherosclerosis—a pre-existing heart disease—cannot and does not rebut the presumption that his death was caused by his employment as a city fireman.

In *Turner* v. *Workmen's Comp. App. Bd., supra*, 258 Cal.App.2d 442, we also pointed out that under the 1959 amendment of Labor Code section 3212.5, the presumption that the employee's in-service heart trouble was industrially caused "may be controverted by other evidence" (*id.*) of nonindustrial causation: i.e., by evidence thereof other than proof of pre-existing heart disease. Under the identical amendment of Labor Code section 3212, the same possibility exists in the present case. The remaining question, therefore, is whether there is any such evidence which rebuts the presumption against respondent city. Because no evidence attributes the decedent's heart attack to his scuba diving or other strenuous activity outside of either employment, the

[2]Under Labor Code section 3212.5, which applied in the *Turner* case, the presumption that "heart trouble" is industrially caused arises in favor of city policemen and other local law enforcement personnel who manifest it after five years of service. The section 3212 presumption applies where city firemen, and other public employees engaged in active firefighting, develop "heart trouble" at any time in service. The 1959 amendment of both statutes was enacted in identical language and by the same 1959 legislation. (Stats. 1959, ch. 758, §§ 1 and 2, pp. 2744-2746.)

only other possible cause of his death was the Acme employment.

Dr. Rosenman was not asked for, and did not give, an opinion as to whether any specific physical activities of the decedent in the Acme job, at any time, contributed to his death. In a written report to respondent city in April 1965, subsequently received in evidence, Dr. Griffeath stated in part that the decedent's "moderate physical activity" before his collapse "more likely than not . . . played a precipitating role in Mr. Hemingway's sudden death." When he testified before the referee three months later, Dr. Griffeath declined to speculate as to whether the events immediately preceding the decedent's collapse played "any role in precipitating" his death, because he—the witness—had no "details of exactly what . . . [the decedent] . . . was doing" at the time.

Dr. DeSilva testified that the decedent died from a cardiac arrhythmia, to which current physical exertion could have contributed. In the witness's opinion, if the decedent had been carrying a fire extinguisher weighing 17 pounds when he collapsed, or 35 pounds for a distance of "up to a hundred yards or so," neither would have contributed to his death. On the other hand, in Dr. DeSilva's view, "carrying, say, 70 pounds a hundred yards, a city block, it could certainly have been an aggravant; a shorter distance, perhaps not." Whether or not the exertion precipitated the heart attack depended, according to Dr. DeSilva, upon the weight being carried; the distance; the time elapsed since the last preceding carry; whether the carry was "at the usual pace and the usual distance"; and "if . . . [the decedent] . . . was able to do it without any difficulty the week before."

It is not disputed that, generally, the decedent's duties on the Acme job required him to drive to customer locations in a truck and to lift and hand-carry fire extinguishers, of various weights, to and from the vehicle. It also appears—although less clearly—that he refilled empty extinguishers at the truck and carried them back, heavier when filled, to their installation points. On the question whether the physical exertions involved caused the decedent's fatal heart attack, the decisive facts are the actual weights, distances and related details as discussed by Dr. DeSilva.

None of the decisive facts was known to any of the medical witnesses, none clearly appears in the record, and some are wholly absent. The testimony of the one person who was present when the decedent collapsed was received in evidence

by verbal stipulation of the parties. Three witnesses, none of whom had any knowledge of the actual facts, testified concerning the weights of various types of fire extinguishers. After this evidence was received, and after all three physicians had testified, another stipulation—which is both ambiguous and incomplete—contributed some evidence of the decedent's activities on the Acme job on the day of his death.

According to the aggregate evidence thus developed, and because of the manner in which most of it was received, the empty fire extinguishers handled by the decedent on the day of his death apparently averaged about 35 pounds in weight, but could have weighed up to 47 pounds when filled. There is no evidence at all as to whether the decedent had been carrying the extinguishers singly or in pairs, nor of any distance involved, nor of the pace at which he had been working, nor of his activities on the Acme job ''a week before'' or at any other time before the day of his death.

In short, the medical opinion evidence in support of respondent board's finding that the decedent's fatal heart attack was not caused by the Acme employment is without probative value because the expert witnesses were not acquainted with, and the record fails to show, the essential facts. (*Winthrop* v. *Industrial Acc. Com.* (1931) 213 Cal. 351, 355 [2 P.2d 142]. See *Nielsen* v. *Industrial Acc. Com.* (1934) 220 Cal. 118, 123 [29 P.2d 852, 30 P.2d 995].) On the other hand, the evidence shows that certain facts could have existed; and that, if they did, the heart attack could have arisen from the Acme employment and the presumption against respondent city could be rebutted. Such issues are open to further hearing by respondent board upon the annulment of its order by this court (*Winthrop* v. *Industrial Acc. Com.* (1934) 220 Cal. 114, 117-118 [29 P.2d 850]), and should properly be pursued at such proceedings.

Under the circumstances, we hold, as previously stated, that the statutory presumption that the decedent's death arose from his employment by respondent city is not and cannot be rebutted by evidence attributing it to pre-existing heart disease; and we annul the order under review for the reason that it cannot be determined from the present record whether the presumption is or can be rebutted by evidence that his death arose from his employment by Acme. The facts of the Acme employment, medical opinion specifically directed to such facts, and the question whether such evidence rebuts the

presumption against respondent city, remain to be pursued upon the remand next ordered.

The decision after reconsideration is annulled, and the cause is remanded to respondent Workmen's Compensation Appeals Board for further proceedings not inconsistent with the views expressed herein.

Devine, P. J., and Christian, J., concurred.

The petitions of respondents board and city for a hearing by the Supreme Court were denied April 17, 1968.