[Civ. No. 12650. Third Dist. Mar. 9, 1971.]

NOREENE SUE MICHON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
STATE COMPENSATION INSURANCE FUND et al.,
Respondents.

## COUNSEL

Richard J. Asbill for Petitioner.

Rupert A. Pedrin, Marcel L. Gunther, T. Groezinger, Loton Wells and Phillip M. Miyamoto for Respondents.

## OPINION

**PIERCE, P. J.**—Petitioner seeks review of an opinion and decision on reconsideration which reduced a referee's award for permanent disability from 23½ percent (or a total of $4,621.04) to 7¼ percent (or a total of $1,425.65).[1] Reconsideration had been granted upon the petition of Miss Michon's employer, Bank of America, and its compensation carrier.

The question involved is whether the Workmen's Compensation Appeals Board ("board") has power to grant reconsideration and to reduce the award. Under the circumstances to be related, we have concluded that it did not and will annul the board's order.

### FACTS

On June 8, 1967, petitioner, a 33-year-old-bank teller, was in the bank's vault on a 3-foot step ladder which was faulty and collapsed. She was thrown to the floor "with the brunt of her fall being taken in her left low back." The accident was duly reported to her employer, and she was originally treated by a Redding physician, J. C. O'Banion, M.D., who referred her for an orthopedic evaluation to an orthopedic specialist, David W. Hankin, M.D. The latter's four reports were in evidence when the referee's findings, hereinafter to be discussed, were made. The first report, dated October 25, 1967, described Miss Michon's complaints as "low back pain," a history which included the description of the accident, Dr. O'Banion's treatments, an expanded account by the patient of "constant pain at about the L-5 level" and improvement during two separate vacations of one week each in July and October. Applicant had stated she had gone deer hunting, experiencing no pain when "she packed her gear" up a mountain but this was followed by pain afterwards. Except for petitioner's vacation she had missed no time from work.

At the time of the examination "her symptom complex . . . [was] some-

---

[1] In addition petitioner's attorney's fee which by the original award had been fixed to be of the reasonable value of $450 was reduced to $150.

what improved," but she was still suffering pain "in the left of the midline along the top of the sacroiliac joint in the region of the transverse process of L-5." The doctor also reported: "This pain is increased to some minor degree on lateral flexion to the right." X-rays of the lumbar spine were said to show "an occult spina bifida at the level . . . of the first sacral segment. . . . Spot lateral of the lumbar sacral joint does in fact show some narrowing of the intervertebral disc space at the L5-S1 level."

Dr. Hankin's report of January 3, 1968, described "a fairly severe bout of pain lasting approximately three weeks; however, since that time she has been careful in her activities in regards to her bending, lifting, stooping, etc. and has gotten along fairly well." The doctor, while discharging petitioner "back to Dr. O'Banion's care," added, "I did caution her that in the future she is going to have to be somewhat careful with her back with her bending and stooping and lifting. I also cautioned her that she might have recurrent problems with her low back as a result of this original injury."

The next report dated October 25, 1968, made pursuant to the request of the compensation carrier, was for the purpose of rating. It reports that petitioner was "getting along well, and continues to work at her job in the bank. . . . [S]he does have a fairly constant mild ache which she describes is more a nuisance than a real inhibiting factor. It increases if she lifts, and if she does lift anything too heavy, the pain persists for 2-3 days. Evidently, she used to do things like back packing which she is no longer able to do. She has some minor problems with such things as back exercises and housework. She has tried snow skiing on one occasion, although, she was very careful, and got along well." Under "DIAGNOSIS" the report states: "Status post acute L-5 S-1 disc—recovered. I think this lady is permanent and stationary. I feel that she may have problems, and would suggest that while this is a possibility, it is likely not a probability. No medication or further treatment were advised today. She will be seen as necessary."

Intervening that report and the next one from Dr. Hankin, a permanent disability report was held before the referee. The reports referred to were put in evidence. Petitioner's testimony regarding her complaints was conservative. Excerpts: "Well, I am just limited to what I can do." Asked if she had constant difficulty in the back, she answered, "Not constant. No. If I do something that I shouldn't do it tells me. . . . [I]f I lift something or . . . vacuum the whole house or anything, if I pick up too much firewood to bring into the fireplace and if I bend down and do too many boxes in the supply room, which I was told not to do— . . . Well, I don't bend down and pick up coin [in bags], if I am working in the vault, because it is too heavy. I have someone else lift it, where I always lifted it before." She stated that when she did attempt such things she had a dull ache in her

back or lower left hip, and she indicated the point of pain. She reported other limitations which are accurately included in the referee's findings.

Because Dr. Hankin was away on a trip, a final report from him was not then available. The hearing was continued. A further hearing was scheduled for June 18, 1969.

Meanwhile on February 27, 1969, Dr. Hankin returned and gave an expanded report, the substantial portion of which states: "She had in the past strained[*] an acute L-5 S-1 disc herniation. I think, therefore, she should attempt to restrict her activities to prevent a recurrence of same. This would be best performed by avoidance of excessive or repetitive bending, and associated heavy lifting." (Italics ours.)

The referee's summary is a fair treatment of the foregoing evidence and other evidence not necessary to relate here.

On April 17, 1969, a permanent disability rating was requested by the referee. The rating recommended by the rating specialist was 23½ percent.

The hearing held June 18, 1969, was restricted to the testimony of the rating specialist. Also Dr. Hankin's report of February 27, 1969, hereinabove summarized, was admitted into evidence. The rating specialist explained the factors which go into permanent ratings. He stated that his rating had been based solely upon the referee's description which, as we have shown, had been a fair summary of the conclusions of Dr. Hankin's report of February 27.

On October 24, 1969, the referee's findings and award were filed. They included the permanent disability report of 23½ percent.

On November 13, 1969, the employer and its compensation carrier filed their petition for reconsideration. This petition was based upon the grounds that (1) the evidence did not justify the facts found by the referee, and (2) those facts did not support the award made.

On November 20, 1969, petitioner's answer was filed. It denied specifically the allegations of the foregoing petition for reconsideration.

On November 25, 1969, the referee who had made the finding and award recommended denial of the petition for reconsideration.

On December 9, 1969, the petition for reconsideration was granted and an order made for examination and report by the Medical Bureau of the Division of Industrial Accidents. The findings and award were annulled.

The medical examiner to whom petitioner was referred was a Louis S.

---

*(The doctor obviously intended to say "sustained.")

Campbell, M.D. The examination took place January 6, 1970 (over a year after Dr. Hankin's last examination and almost a year after Miss Michon had testified before the referee).

We have examined the report of Dr. Campbell and have compared it with the evidence before the referee in the original proceedings. Although the new doctor's findings may not be strictly relevant to these proceedings, we relate them in a note in the margin[2] principally because we wish to demonstrate that they show no change in the disability of Miss Michon which could be said to justify an exercise of the board's continuing jurisdiction under Labor Code section 5803.

This statement by Dr. Campbell was copied into a report of a deputy commissioner of the board which was referred to the same rating specialist who had made the earlier rating. Based upon the description quoted, that rating specialist on February 27, 1970, reduced the permanent disability rating to 7¼ percent as described above.

On April 6, 1970, in an "Opinion and Decision (after reconsideration)" the board made the order as stated at the outset of this opinion. No discussion or reason for the reduction in rating, other than the rating specialist's statement (which in turn had given no reason for the reduction other than the doctor's statement), was stated in the opinion.

### THE CONSTITUTIONAL AND LEGISLATIVE MANDATES RE WORKMEN'S COMPENSATION GENERALLY

Within the mandate of California Constitution article XX, section 21, expressly declaring that the Legislature is vested with "plenary power . . . to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any and all persons to compensate any or all of their workmen for injury or disability . . . sustained by the said workmen in the course of their employment," and its express declaration that this is "de-

---

[2]Dr. Campbell finds precisely the same history, subjective complaints, frequency and extent of pain and discomfort under the same circumstances as had Dr. Hankin. He reads the X-rays the same way. Under "DISCUSSION" the doctor makes the observation that, although the symptoms are subjective *"At the same time I believe that this woman was sincere in describing her continuing subjective complaints."* (Italics ours.) The report concludes as follows:

*"Factors of Disability Resulting From Injury*:

"1. Left sided sacral and left sided gluteal pain, which is characterized by remissions and exacerbations, the latter occuring at the time of/and following prolonged sitting, sitting and driving, and attempted lifting while in a forward flexed position. The reappearance of pain in these areas, and at these times, is considered to be valid and ranges from slight to midway between slight and moderate in degree.

"No further treatment is necessary to cure or relieve the effects of injury."

clared to be the social public policy of this State, *binding upon all departments of the State government,*" the Legislature adopted section 3202 of the Labor Code providing that its workmen's compensation provisions "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." That command to the court has been heeded many, many times by our Supreme Court and appellate courts. (Italics ours.) (See cases cited in West's Lab. Code Ann., § 3202, pp. 456-459, 1970 Supp., p. 165 et seq.)

### POWER OF BOARD TO GRANT RECONSIDERATIONS IS LIMITED

The Legislature has by statute specified when petitions for reconsideration may be granted. Labor Code section 5903 sets forth the exclusive grounds therefor. We quote it in the margin.[3] As stated above, the employer had sought reconsideration on grounds (c) and (e), namely, that the evidence did not justify the findings of fact and that the facts (found) did not support the award. At the outset it should be observed that when the original hearing was held the attorney representing the compensation carrier did not challenge the testimony of petitioner, the reports of Dr. Hankin based upon his examinations of petitioner and X-rays, the referee's summary of the evidence, dated January 23, 1969, the permanent rating of disability at 23½ percent dated April 22, 1969, based upon the referee's characterization of petitioner's condition as "[b]ack disability requiring avoidance of excessive or repetitive bending and heavy lifting," the report of Dr. Hankin dated February 27, 1969, not based upon any examination but merely characterizing the extent of petitioner's back limitation.

Neither the employer nor its carrier registered any disagreement with the report of the doctor dated February 27, 1969. They produced no evidence of their own, medical or otherwise. Nine months after that report and five months after submission, their petition for reconsideration was filed. It was supported only by a conclusionary statement of grounds. The body of the petition quibbles over semantics. The board, however, accepted the petition

---

[3]"At any time within 20 days after the service of any final order, decision, or award made and filed by the appeals board or a referee granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby *may petition* for reconsideration *upon one or more of the following grounds and no other*:

"(a) That by such order, decision, or award made and filed by the appeals board or referee, the appeals board acted without or in excess of its powers.

"(b) That the order, decision, or award was procured by fraud.

"(c) That the evidence does not justify the findings of fact.

"(d) That the petitioner has discovered new evidence material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing.

"(e) That the findings of fact do not support the order, decision, or award.

"Nothing contained in this section shall limit the grant of continuing jurisdiction contained in Sections 5803 to 5805 inclusive." (Italics ours.)

as justifying action. Against the recommendation of its referee it annulled the findings previously made and ordered a new medical examination. That course of action is not justifiable under Labor Code section 5903. There had been nothing really equivocal in the report of Dr. Hankin nor in his summing up, and the uncontradicted evidence justified the findings of fact which in turn support the award.

Dr. Campbell, of course, did not examine petitioner until after the board's order was made. His was not evidence newly discovered within the meaning of section 5903, subdivision (d). Respondents, after a full hearing, had merely gone in quest of an assertively more conservative medical report, apparently translatable into a lower permanent rating. We have noted that we can find nothing in Dr. Campbell's report (quoted above) which differs from Dr. Hankin's analysis. Both doctors found a herniated disc from the acute stages of which the patient had recovered. Both agreed that when she engages in the activities described as pain-producing, she suffers pain. Dr. Hankin says the applicant therefore should not do those things. Dr. Campbell does not say that in so many words, but as a matter of common sense it would seem to be an inescapable conclusion from what he does say. The latter day ratiocinations of the rating specialist reducing the disability rating from 23½ percent to 7¼ percent appear somewhat baffling. We do not, however, base our ruling on that puzzlement. The fact finder and the board found the reduction proper. Had the board acted within its power that would have ended the matter. That is settled under case law too firmly established to be questioned.

But the board *exceeded its power* when, without cause, it granted the employer-carrier's petition which, itself, set forth no sufficient cause. A *court* does not have power to overturn its judgments and grant new trials capriciously. (See 3 Witkin, Cal. Procedure (1954) p. 2051, citing *Diamond* v. *Superior Court* (1922) 189 Cal. 732, 736 [210 P. 36], and other cases; *id.* 1967 Supp., p. 835, citing *Fomco, Inc.* v. *Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166 [10 Cal.Rptr. 462, 358 P.2d 918].) We hold arbitrary power is similarly denied the board.

Labor Code section 5906 provides that the board may grant reconsideration upon its own motion.[4] We interpret the Legislature in granting that power to have intended that, whether reconsideration is initiated by petition of a party aggrieved or upon the board's own motion, the order granting reconsideration must be based upon one of the grounds specified

[4]Actually the language of the section presumes the existence of the power: "Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion. . . ."

in section 5903. Otherwise, workmen's compensation hearings could be tried over and over again.

It is to be noted, however, that within limits prescribed in sections 5803-5806, the board does have continuing jurisdiction "upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated." (Lab. Code, § 5803.) Nothing herein stated shall be construed as an attempt by this court to circumscribe that power. Under the facts here no contention was or can be made that Miss Michon's disability had changed in any respect for better or worse during the interval between the initial and the later order.

The order is annulled with directions to the board to reinstate the award (including attorney's fee) initially made in accordance with the views herein expressed.

Friedman, J., and Janes, J., concurred.

The petitions of respondents Board and State Compensation Insurance Fund for a hearing by the Supreme Court were denied May 6, 1971.