[Civ. No. 12841. Third Dist. Sept. 29, 1971.]

ROBERT R. GILLETTE, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CITY OF WOODLAND et al., Respondents.

**COUNSEL**

William T. Hays for Petitioner.

Rupert A. Pedrin, R. E. Ryan, T. Groezinger, James J. Vank and W. R. Lowndes for Respondent.

**OPINION**

**PIERCE, J.**\*—Petitioner seeks review of an order of the Workmen's Compensation Appeals Board on reconsideration dated August 18, 1970. In that order the board found and held that applicant Robert R. Gillette "did not sustain injury arising out of and occurring in the course of his employment." Applicant petitioned for review of that order upon the ground that the board in its original order granting reconsideration (dated March 20, 1970) lacked power to make such an order. We issued a writ of review and will annul the order. We concur with petitioner that the board had lacked power to grant the carrier's petition for reconsideration of the referee's original findings and award because that power was exercised contrary to the provisions of Labor Code section 5903, as construed by this court in *Michon* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App. 3d 917 [93 Cal.Rptr. 476] (hg. den.); also because the board erred in failing to make a finding negating the statutory presumption. (Lab. Code, § 3212.)

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The original findings and award dated January 30, 1970, had found that petitioner, a fireman, "sustained a heart trouble injury arising out of and occurring in the course of his admitted employment" which had caused "temporary total disability beginning June 23, 1969 . . . and continuing indefinitely thereafter."

The carrier's petition for reconsideration although stated to be upon the grounds that the board had "acted without or in excess of its powers," that "evidence does not justify the Findings of Fact" and that the "Findings and Award [are] unreasonable," actually based its attack upon the claims "that there was no episode [manifestation of an arteriosclerotic heart disease] in September 1968, that applicant's testimony to the [contrary] is not worthy of belief, that all of his disability is due to the off the job episode [further manifestations of the stated heart disease] of June 22, 1969." The carrier did not dispute that the previously existing arteriosclerotic heart disease was work-connected. Competent medical testimony showed that it was, and the referee so found. The carrier's position was that this opinion, accepted by the referee, was based in part upon a history taken from the patient (the applicant) and reiterated by the latter in his testimony. The testimony of an applicant, however, describing what has happened to him cannot, according to the carrier, be believed because—as the carrier mentions in three places in its petition for reconsideration—it is "self-serving."

*Michon, supra,* effectually disposes of most of the issues on this appeal. The only real question presented to us here is: Where a trier of fact accepts the opinion of a doctor who has used as a part of that opinion a history given by the patient, has it relied upon inadmissible evidence?

## THE FACTS

We state the facts relevant to the issues presented:

Petitioner, born February 11, 1927, has been an employee of the Woodland Fire Department and a "fireman" since 1953. In 1959 he achieved the rank of captain. Woodland's fire department, described as being "medium-sized," is one in which both regular firemen and the captain do actual fire fighting. Petitioner worked 24 hours on regular duty and 24 hours off, 56 hours a week. He was, however, on call day and night on his off days.

Until a date hereinafter noted he was unaware of the existence of any heart disease. There had been certain earlier incidents, however. Petitioner testified to one such incident occurring near the end of September 1968 when he, with other firemen, had responded to a residential garage fire.

This required him to go both into the garage and into the home in which he had to go up and down stairs. During this fire fighting episode he felt weak and fatigued and some time thereafter commenced feeling nauseated from the exertion, with neck and arm pains. In describing this episode, Dr. Robert Woods Brown (whose report and opinion were thereafter to be accepted by the referee) refers to petitioner's reported history as follows: "He reports having several episodes of anterior chest pain, associated with nausea and generalized weakness, precipitated by exertion. In September, 1968, while engaged in extinguishing a garage fire, he had a severe chest pain and nausea upon finishing this activity. He returned to the fire house, and rested during the remainder of the shift." At the request of the carrier the doctor's testimony was taken. He was cross-examined regarding this incident of September 1968 and the statement quoted above. He testified the history had been given and the statement made. He was asked, "How long did this chest pain last, please, sir?" And he answered, "I don't believe I made a note of it, but I did note that he rested because of this chest pain. I might say that I would, if I may, assume that his chest pain was relieved by rest. I don't make mention of how long it lasted, but I don't intend to have implied here that the chest pain lasted the remainder of the day.

"Q. Was this just one chest pain or was it a series of chest pains?

"A. According to my history, he had severe chest pain and nausea upon finishing the activity, and I don't mention a series of chest pains."

We use a summary of a "summary of the evidence" (the referee's) and other evidence to describe additional facts. Petitioner had not been feeling well since October or November 1968 "in that he had experienced a nauseated feeling, and would be unable to think after doing such work as yard work. During that time his neck would feel like it was swelling, and he would develop pressure in his arm after activities."

On June 22, 1969, he was on paid vacation at a summer home at Clear Lake. He suffered a heart attack on that date. He had not been feeling well the week before June 15, 1969. On that date he and approximately six other persons helped a neighbor push a dock into the water at Clear Lake, also on approximately June 14 he had done some work unloading his trailer, leaned over, felt pain and nausea. On June 22 he had worked at his cabin cutting points off cactus plants with hand clippers (and apparently he also hoed them). "After doing that work for awhile in the morning on a cool day he experienced a feeling like that of indigestion with weakness and fatigue. He went into the house on developing those symptoms that day and rested for approximately 45 minutes." He then informed his wife he thought he was having a heart attack. He was hos-

pitalized. His fears of a heart attack were confirmed. He had suffered a disabling myocardial infarction.

Before the September 1968 episode, applicant had been concerned about his heart and had been examined by his family physician, a Dr. Neumann. Such examinations had occurred in 1962, in 1964 and in 1967. He had been given EKG examinations and had been told that he had no heart condition. Because of a reaction after the incident in which he had assisted with the sliding of the neighbor's dock (June 15) he had again visited Dr. Neumann on June 18, 1969, and again on June 20. At that time he told Dr. Neumann about having had previous trouble.

Petitioner, when these proceedings were brought, interviewed Dr. Brown (on August 29, 1969). The doctor's report dated September 29, 1969, is in evidence. When he was called as a witness by the carrier, as stated, he qualified as a physician licensed in 1959. He is a graduate of Cornell Medical School in New York. He specializes in internal medicine. He had taught at the University of California Medical Center. He had written treatises.

We have described portions of the report (the history taken) above. The report also included a physical examination, an impression "Coronary Heart Disease. Status Post Myocardial Infarction." The doctor's comment and opinions read as follows: "From the above history, it appears probable that Mr. Gillette's cardiac symptoms had their onset in association with his fire extinguishment activity in September, 1968. It is probable that this episode contributed to his coronary heart disease, the symptoms of which recurred in June, 1969 and led to his hospitalization with the diagnosis of myocardial infarction. He is now asymptomatic on a limited activity schedule. He should avoid emotional stress and physical exertion which causes angina pectoris. He will require medical management for an indefinite period. At this time, I am unable to characterize his condition as permanent and stationary."

Dr. Brown also testified that petitioner's "arteriosclerotic heart disease was developing during the time that he was employed as a fireman" and "manifested itself" then. He said that the "episodes of angina were contributory to the infarct [and went] to the underlying disease."

(We have in this statement of fact purposely left out the cause asserted by the carrier of hereditary heart disease, an unstriking condition of overweight and similar matters because the doctor asserted they had nothing to do with the cause of petitioner's heart disease.)

There was another medical witness in the case, a Dr. Malcolm McHenry.

He filed a report on behalf of the carrier but did not testify. His report, based however upon only part of the facts, was not on all fours with that of Dr. Brown. Like Dr. Brown, he reported (in a report dated November 5, 1969): "This patient does in fact have arteriosclerotic heart disease with an acute myocardial infarction occurring in June of this year [1969]. . . . It is somewhat questionable at this time that maximum improvement from his recent myocardial infarction has occurred in view of the recent increase in angina intensity.

". . . . . . . . . . . . . . . . .

"Time will tell. . . ." This doctor, however, also said, "I do not see any medical probability that his occupation as a firefighter directly influenced the acute myocardial infarction incurred in June."

The case was submitted to the referee on the basis of the reports and testimony outlined above. He rendered an opinion and decision. It stated in part: "It is satisfactorily established by applicant's testimony and the medical findings and conclusions expressed by Dr. Robert Woods Brown that applicant sustained a heart trouble injury arising out of and occurring in the course of his admitted employment, and that applicant's heart trouble first manifested itself during September 1968, at which time applicant developed symptoms of angina pectoris while extinguishing a fire." After quoting Dr. McHenry's statement negating fire fighting as a "direct" influence upon the myocardial infarction (which we have quoted above), the referee says: "Detracting from the persuasiveness of Dr. McHenry's conclusion is the fact that he does not discuss the symptoms applicant sustained at the time of extinguishing the fire in September of 1968." The referee stated therefore that he was accepting Dr. Brown's opinion "that applicant's work as a fireman was a contributing cause to applicant's myocardial infarct. . . ." The actual findings and award, initially not disputed and therefore accepted by the board, were in accordance with this opinion and decision. (No doubt of the fact that petitioner suffered a temporary total disability is presented.) We have adverted above to the petition for reconsideration, to the order granting that petition and to the reason therefor. The doctor selected by the board was a Dr. John J. Kelly, a heart specialist. He negated the episode of September 1968 as being a contributing factor. He testified as a reason: "[I]f there had been an injury shown by electrocardiogram [after the September 1968 incident] . . . then there would be no doubt in my mind that the work had provoked the heart disease." His further testimony included: "Q. Doctor, are you saying that before you would feel that his work contributed that he would actually have to sustained [sic] a myocardial infarct rather than a lesser manifestation of heart disease?  A. Yes, sir."

### Labor Code Section 3212 and The Burden Of Proof

Section 3212 provides in pertinent part that "In the case of members of . . . fire departments of cities, counties, cities and counties . . . the term 'injury' . . . includes . . . heart trouble which develops or manifests itself during a period while such member is in the service of such . . . department. . . .

"Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it."

"[E]ither event, development or manifestation during employment, will activate the presumption; . . ." (*State Employees' Retirement System* v. *Workmen's Comp. App. Bd.* (1968) 267 Cal.App.2d 611, 617 [73 Cal.Rptr. 172].)

A presumption is not evidence and the presumption of section 3212 is not conclusive. Mr. Witkin, in the second edition of his treatise on California Evidence in sections 213 to 222 at pages 193 through 202, provides an extensive discussion under the general heading "Nature and Effect of Rebuttable Presumptions." We attempt to summarize it. *Smellie* v. *Southern Pacific Co.* (1931) 212 Cal. 540, 549 [299 P. 529], asserting the presumptions *were* evidence pronounced a rule sharply criticized over the years. With the adoption of the Evidence Code section 600, subdivision (a), the *Smellie* rule has been expressly repudiated. (Witkin, Cal. Evidence (2d ed. 1966) § 217, p. 197.) That Evidence Code section defines a presumption as "an asumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." While scholars have not agreed as to the quantum of weight to be accorded a presumption, e.g., whether it is dispelled when the adverse party produces any evidence contrary thereto or only by credible evidence (*id.* at § 216, pp. 196-197), in civil cases presumptions usually have been divided between those " 'affecting the burden of producing evidence' " and those " 'affecting the burden of proof.' " (*Id.* at § § 219, 220, pp. 199, 200.) "A presumption affecting the burden of proof is a presumption established to *implement some public policy.* . . ." (*Id.* at § 221, p. 200.) "The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates *the burden of proof as to the nonexistence of the presumed fact.*" (Italics ours.) (Evid. Code, § 606.) The comment to that section states, "Certain presumptions affecting the burden of proof may be overcome only by *clear and convincing proof.*" (The last italics are ours.)

In summarizing these matters this court is not necessarily wedding the provisions of the Evidence Code to the Labor Code. (See Lab. Code, § 5708.[1]) We are, however, applying the rationale of the law relating to presumptions to the rebuttable presumption created by Labor Code section 3212.

■ We think that it must be conceded that if the presumption applies here it is one of public policy. Therefore, where facts giving rise to the presumption have been proven at the outset, the burden of proof negating the presumption falls upon the employer. That we at least intimated in *State Employees' Retirement System* v. *Workmen's Comp. App. Bd., supra,* under the facts there existing. ■ Under the circumstances here extant the referee expressly found facts which—to use the definition of a presumption—gave rise to "an assumption of fact that the law requires to be made." The "fact or group of facts" which the referee found were that petitioner while fighting a fire suffered a development and a manifestation of the heart trouble during employment. Those then were "facts found" giving rise to "an assumption of fact the law requires to be made." Stated in another way (as it was stated in the *State Employees' Retirement System* case) "the development or manifestation during employment [i.e., in the case before us in the September 1968 episode], will activate the presumption"—by the express mandate of section 3212. There was no evidence produced by the carrier that the 1968 manifestation of petitioner's atherosclerotic heart disease did not occur. Petitioner had testified that it did; he had elaborated upon it in the history given to Dr. Brown. Dr. Brown both included an account of this in his report and in his testimony and stated its significance. It constituted the critical element in his ultimate opinion that this incident was the first manifestation of a previously atherosclerotic heart disease. Dr. McHenry, on the other hand, did not even mention the "manifestation." The referee commented upon that omission in his opinion and upon the fact that the carrier had produced no evidence to dispute petitioner's statement that he had related his symptoms at the time of their occurrence to another member of the fire department.

True, the referee had stated in his findings "the decision and award herein did not rest on the presumption provided in Section 3212." In a sense it did not. It probably did not have to be premised. (See 2 Witkin,

---

[1]Labor Code section 5708 states: "All hearings and investigations before the appeals board or a referee are governed by this division and by the rules of practice and procedures adopted by the appeals board. In the conduct thereof they shall not be bound by the common law or statutory rules of evidence and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this division. All oral testimony, objections, and rulings shall be taken down in shorthand by a competent phonographic reporter."

Summary of Cal. Law (1960) Workmen's Compensation, § 75, pp. 1716-1717.) But the presumption existed under the facts stated and the carrier did not sustain its burden to rebut it. (*Bussa* v. *Workmen's Comp. App. Bd.* (1968) 259 Cal.App.2d 261, 267 [66 Cal.Rptr. 204] (hg. den.).)

## THE EVIDENCE OF PETITIONER'S STATEMENT WAS NOT INADMISSIBLE OR UNBELIEVABLE AS BEING "SELF-SERVING"

■ As stated above, the carrier has argued that petitioner's description of the September 1968 incident was unbelievable as being "self-serving." We find no merit to this argument. Every time an applicant testifies to facts which favor his claim of disability he testifies to further that cause. If the carrier denounces such testimony as unbelievable because it is "self-serving," it effectually argues that an applicant may neither testify nor state a subjective history to his doctor. That, of course, is to argue an absurdity. It also disputes well settled law to the contrary. (See Witkin, Cal. Evidence, *supra*, § 555, pp. 529, 530, discussing Evid. Code, § 1251.) The referee properly considered all of the evidence relating to the September 1968 incident.

## THE BOARD EXCEEDED ITS POWER LIMITED BY LABOR CODE SECTION 5903

■ The board when it granted the carrier's petition for reconsideration said: "We are not completely satisfied with the medical evidence in the record. . . ." No new medical evidence had been either claimed to exist or shown to be necessary or proper to complete the hearing. Actually, the board's statement was the declaration of an intent to retry the matter. If the somewhat extensive statement of facts recited in this opinion above has served its purpose it has demonstrated that Dr. Brown's report *and testimony* were thorough. They proved that petitioner was entitled to a rating of temporary total disability. That was the rating the referee had given, and his findings were justified by the evidence. In *Michon* v. *Workmen's Comp. App. Bd., supra*, 15 Cal.App.3d 917, at page 924, we held unequivocally that after that procedure has been taken the board does not have the power, and, under Labor Code section 5903, is not justified in annulling findings previously made and in ordering a new medical examination. We pointed out a court does not have power to "overturn its judgments and grant new trials capriciously," and we held "arbitrary power is similarly denied the board." The Supreme Court in *Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 92 [95 Cal.Rptr. 447, 485 P.2d 799], quoted with approval the views expressed by this court

in *Michon*. We find the procedural situation here indistinguishable from that in *Michon*.

The order is annulled with directions to the board to reinstate the award initially made in accordance with the views herein expressed.

Friedman, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied on October 29, 1971, and the following opinion was then rendered:

**THE COURT.**—The State Compensation Insurance Fund seeks a rehearing, contending that *Michon* v. *Workmen's Comp. App. Bd.*, 15 Cal. App.3d 917 [93 Cal.Rptr. 476], does not apply here because there was a conflict in the medical testimony of Dr. Brown and Dr. McHenry. The carrier cites *Franklin* v. *Workmen's Comp. Appeals Bd.*, 18 Cal.App.3d 682, 685 [96 Cal.Rptr. 201], which distinguishes the *Michon* case in a situation where the appeals board grants reconsideration in the face of conflicting evidence.

There was no conflict of evidence here. Dr. Brown's testimony formed substantial evidence which supported the referee's finding of industrial causation. Dr. McHenry's testimony did not constitute substantial evidence, because it ignored a salient portion of the claimant's medical history. (See *Place* v. *Workmen's Comp. App. Bd.*, 3 Cal.3d 372, 378-379 [90 Cal. Rptr. 424, 475 P.2d 656].) The board's order of reconsideration was based upon Labor Code section 5903, subdivision (c), which permits reconsideration when the evidence does not "justify" the findings of fact. (See *Redner* v. *Workmen's Comp. Appeals Bd.*, 5 Cal.3d 83, 92 [95 Cal.Rptr. 447, 485 P.2d 799].) Here the referee's findings were supported by the only cognizable medical evidence. There being no conflict, the board's order of reconsideration was arbitrary and exceeded its authority.

The petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied November 24, 1971.