[No. B034506. Second Dist., Div. Six. May 4, 1989.]

HERBERT PARISH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and COUNTY
OF VENTURA, Respondents.

COUNSEL

Lewis, Marenstein & Kadar and Robert J. Sherwin for Petitioner.

William B. Donohoe, Charles E. Finster, Graves, Roberson & Bourassa and Marshall W. Graves for Respondents.

OPINION

ABBE, J.—We hold respondent Workers' Compensation Appeals Board (WCAB) erred in concluding the evidence rebutted the Labor Code section 3212.5 presumption that applicant's heart trouble arose out of and in the course of his employment as a deputy sheriff by respondent County of Ventura.

Applicant was employed as a deputy sheriff by defendant County from December 19, 1966, through August 27, 1982. Applicant claims in his petition, among other things, cumulative industrial injury to his heart.

Applicant testified and reported to the examining physicians that stressful conditions in his work included being on call 24 hours a day; gathering information and examining bodies at the scene of homicides; working at autopsies where the victims' fingers were cut off so he could make fingerprints; carrying dead bodies to help the coroner; being pressured by detectives to identify victims and perpetrators; working on rape and child abuse cases that "would get to him after awhile"; and apprehending violent suspects, including an incident where a suspect "stuck a rifle into" applicant's stomach and the rifle "jammed" when the suspect fired it, an incident where a suspect stuck a .38 pistol in applicant's face, and an incident where several armed suspects threatened to shoot him if he tried to arrest them. In September 1982 he noticed an irregular rhythm in his heart while he was lying in bed, and thereafter he occasionally noticed pain in his left arm.

Dr. Markovitz opined applicant had a history of palpitations and indications of premature ventricular contractions (PVC's), a form of arrhythmia,

with high levels of exercise, which were most probably psychophysiological cardiovascular reactions related to chronic job stress; and applicant should be restricted to no emotional distress.

Dr. Winsor reported the severity of the stresses in this case were not sufficient to produce heart disease; no restrictions are needed as far as the heart is concerned; there is no heart disability and no evidence of a heart condition prior to the date of injury; applicant's complaints, as far as his heart is concerned, are out of proportion to the objective findings; and industrial injury did not cause any permanent heart disability.

Based on Dr. Markovitz's prophylactic restriction of no emotional stress as to applicant's heart, the disability evaluation specialist recommended a rating of 29 percent permanent disability.

The workers' compensation judge (WCJ), crediting the opinion of Dr. Markovitz, found applicant sustained industrial heart injury resulting in 29 percent permanent disability.

The WCAB, based on the conflict in the medical evidence between Dr. Markovitz and Dr. Winsor, granted reconsideration and referred the matter to an independent medical examiner, Dr. Brotman.

Dr. Brotman found applicant had a history of sudden rapid heartbeats and premature contractions and exhibited PVC's while on a treadmill. Dr. Brotman diagnosed mitral valve prolapse. Mitral valve prolapse syndrome is defined as a "disorder of the mitral valve (the valve between the left atrium and left ventricle of the heart). . . . Most persons having this disorder have no symptoms, but certain arrhythmias (abnormal rhythms) may develop, such as premature contractions and tachycardia (rapid beat) . . . ." (2 Schmidt's Attorneys' Dict. of Medicine & Word Finder (1988) p. M-145.)

Dr. Brotman concluded applicant does not have any disease syndrome associated with mitral valve prolapse and since applicant's mitral valve prolapse is a hereditary disorder, it is not an industrially related disease.

Dr. Brotman testified mitral valve prolapse is a form of heart trouble and it explains applicant's cardiac symptoms, such as rapid heartbeat and palpitations; it is a genetic disorder; the first cardiac symptoms exhibited by applicant were palpitations at night and coughing and slowing of pulse in August or September 1982; mitral valve prolapse can be treated by "beta blockers" (drugs) that would slow the very fast heart rates and irregular heartbeat attendant to mitral valve prolapse; applicant experienced

irregular heartbeats when he was at a high level of activity, such as when on the treadmill; with the use of beta blockers applicant could engage in any activity, but there's always a chance he could trigger an arrhythmia under physical stress; emotional stress can aggravate or precipitate symptoms of mitral valve prolapse; and since persons with a mitral valve prolapse syndrome have an increase in their adrenaline and sensitivity to adrenaline, they should avoid high levels of emotional stress.

Dr. Brotman testified further he would recommend that a person with mitral valve prolapse avoid higher levels of emotional stress, but there is no relationship between the stress experienced by applicant as a police officer and the onset of applicant's symptoms of mitral valve prolapse because applicant "doesn't really like his job . . . really didn't enjoy the crime work . . . . That seemed to bother him emotionally to do this. [¶] . . . The only reason this came up is they did a treadmill and saw the premature beats and started the whole thing. That's what started all of this. It wasn't necessarily any other reason. He didn't go to a doctor particularly because of that."

In its decision after reconsideration, the WCAB rescinded the WCJ's finding, and found applicant did not sustain industrial heart injury. The WCAB opined that Dr. Brotman's report and testimony established applicant experienced rapid heartbeats and palpitations related to mitral valve prolapse; these symptoms must be considered "heart trouble" within the meaning of Labor Code section 3212.5; and hence, the section 3212.5 presumption that the heart trouble arose out of and in the course of applicant's employment is applicable.

The WCAB concluded, however, that "Dr. Brotman's opinion rebuts the presumption. His opinion indicates that applicant's symptoms relat[ing] to the mitral valve prolapse were not elicited by employment stress. We can only infer, therefore, that the symptoms were elicited solely by non-industrial factors. Whatever non-industrial factors resulted in the onset of the symptoms, there is no evidence of such symptomatology prior to applicant's employment. Thus, we can only conclude that the symptomatology resulted from non-industrial factors that developed contemporaneous[ly] with applicant's employment, and did not preexist that employment. It follows that the opinion of Dr. Brotman rebuts the presumption of compensability and establishes that applicant's heart trouble did not arise out of and in the course of his employment. We will enter a finding accordingly. In addition, we will delete the finding of permanent disability attributable to the heart condition."

Labor Code section 3212.5 provides in part: "In the case of a . . . deputy sheriff, . . . the term 'injury' as used in this division includes heart trouble

. . . which develops or manifests itself during a period while such . . . deputy sheriff . . . is in the service of . . . the sheriff's office . . . . [¶] Such heart trouble . . . so developing or manifesting itself shall be presumed to arise out of and in the course of the employment . . . . This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. . . . [¶] Such heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

■ "Once operative, the presumption cannot be rebutted by a showing that the heart trouble, in some undetected form, really preexisted the employment." *(Johnson v. Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 770, 775 [210 Cal.Rptr. 28]; see *City and County of San Francisco v. Workers' Comp. Appeals Bd. (Wiebe)* (1978) 22 Cal.3d 103 [148 Cal.Rptr. 626, 583 P.2d 151].)

As noted in *Wiebe, supra,* 22 Cal.3d at pages 108-109, the Legislature adopted the presumption in response to " 'the persisting cleavage in medical theory itself' [citation] as to the relationship between stress, physical exertion and progressive heart disease. [Fn. omitted.]" The court noted the Legislature was faced with a situation in which the fate of a worker's claim generally did not turn on the facts of the particular employment or heart attack, but rather was decided almost fortuitously on the basis of which of two medical schools of thought the WCJ or WCAB decided to endorse in a particular case. *(Id.,* at p. 110; see *Johnson v. Workers' Comp. Appeals Bd., supra,* 163 Cal.App.3d at pp. 775-776.) In *Wiebe, supra,* 22 Cal.3d at page 119, the Supreme Court concluded that employees covered by the statutory presumption ". . . should not be precluded from obtaining workers' compensation benefits when the only basis for finding the employee's heart trouble nonwork related rests on evidence that the employee came to his employment with a heart condition."

■ Where facts giving rise to the presumption have been proven at the outset, the burden of proof negating the presumption falls upon the employer. *(Gillette v. Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 312, 320 [97 Cal.Rptr. 542]).

■ To be entitled to the presumption, applicant must first show his disability can be characterized as "heart trouble" within the meaning of section 3212.5. (Cf. *Muznik v. Workers' Comp. Appeals Bd.* (1975) 51 Cal.App.3d 622, 632 [124 Cal.Rptr. 407].)

The "term 'heart trouble' as used in the compensation law has a rather expansive meaning." (2 Hanna, Cal. Law of Employee Injuries & Work-

men's Compensation (2d ed. 1988) Special Classes of Public Employees, § 6.04[3], p. 6-9; see *Muznik* v. *Workers' Comp. Appeals Bd., supra,* 51 Cal.App.3d at pp. 633-634; *Sullivan* v. *Workers' Comp. Appeals Bd.* (1986) 51 Cal.Comp.Cases 80, writ den. [§ 3212.5 presumption applied to deputy sheriff who discovered he had a defective heart valve while taking a treadmill test as part of a routine physical examination].)

As stated in *Johnson* v. *Workers' Comp. Appeals Bd., supra,* 163 Cal.App.3d at page 775, the term heart trouble encompasses any affliction to, or additional exertion of, the heart caused directly by the heart or cardiovascular system or to the heart or cardiovascular system through interaction with the other afflicted areas of the body.

■ The medical evidence here establishes applicant's mitral valve prolapse is a congenital disease prone to arrhythmia when aggravated by stress. It also establishes applicant's heart trouble developed or manifested itself in arrhythmias during a period while applicant was a deputy sheriff in the service of the county sheriff's department within the meaning of Labor Code section 3212.5. The reporting physicians disagreed whether the arrhythmias resulted from job stress; Dr. Markovitz attributed the arrhythmias to job stress and Dr. Brotman attributed them to hereditary disorder.

Thus, the WCAB was confronted with the very evil of the repeated battle of experts with respect to the preexisting heart disease issue the Legislature sought to eliminate by precluding the WCAB from finding the presumption rebutted solely on the basis of attributing heart disability to the preexisting disease, rather than to job stress. (*City and County of San Francisco* v. *Workers' Comp. Appeals Bd. (Wiebe), supra,* 22 Cal.3d at p. 111.) Here, the WCAB, relying heavily on Dr. Brotman's opinion, conceded that the presumption of Labor Code section 3212.5 was applicable, yet erroneously inferred applicant's symptoms must have resulted from surmised contemporaneous nonindustrial factors. The WCAB did not specify, and the record does not disclose, what ". . . contemporaneous nonwork-related event. . . ," if any, was the sole cause of applicant's heart trouble. (*Id.,* at p. 112.) Consequently, the WCAB erred in concluding the evidence rebutted the section 3212.5 presumption; the WCAB's finding that applicant's heart injury did not arise out of and in the course of his employment must be annulled; and the WCJ's findings that applicant sustained industrial heart injury resulting in 29 percent permanent disability must be reinstated.

The portion of the March 30, 1988, decision of respondent WCAB finding that applicant did not sustain an injury to his heart arising out of and in the course of his employment and that the heart injury caused no

permanent disability is annulled; the matter is remanded to the WCAB for further proceedings consistent with the views expressed herein.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 12, 1989.